1

2

3

4

5

6

7                                UNITED STATES DISTRICT COURT
                                WESTERN DISTRICT OF WASHINGTON
8                                          AT TACOMA

9    **MICHAEL DENTON**,                              **Case No. 3:17-cv-05075-BHS-TLF**

                                    Plaintiff,
10          v.                                        **REPORT AND**
                                                      **RECOMMENDATION**
11   **PAUL PASTOR, et al**,
                                                      **Noted for November 9, 2018**
12                                  Defendants.

13

14          This matter has been referred to the undersigned Magistrate Judge pursuant to *Mathews,*

15   *Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976), 28 U.S.C. § 636(b)(1)(B), and Local Rule MJR

16   4(a)(4), and is before the Court on defendants motion to dismiss (Dkt. 104) plaintiff's Amended

17   Complaint (Dkt. 86) under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Plaintiff is

18   proceeding *pro se* and *in forma pauperis*. For the reasons set forth below, the undersigned

19   recommends the Court deny the motion in part and grant it in part.

20                          **FACTUAL AND PROCEDURAL HISTORY**

21          Plaintiff, who is currently an inmate at the Washington Corrections Center, was at all

22   times relevant to this lawsuit a pretrial detainee at the Pierce County Jail.

23          In his original complaint brought under 42 U.S.C. § 1983, plaintiff asserted 11 different

24

25

REPORT AND RECOMMENDATION - 1

claims alleging violations of his federal constitutional rights and rights under the Prison Rape

Elimination Act ("PREA") against more than a dozen named defendants. Dkt. 11. Those

defendants moved to dismiss that complaint arguing: (1) plaintiff failed to exhaust administrative

remedies; (2) plaintiff failed to allege personal participation by the defendants; (3) PREA did not

create a private right of action; and (4) all claims related to receipt of mail should be dismissed

because that issue remained pending before the Court in a separate civil action. Dkt. 29.

The Court granted the defendants' motion as to those of plaintiff's claims predicated on

violations of PREA and denied defendants' motion as to the remaining claims. Dkts. 65, 79. The

Court subsequently allowed plaintiff to file an amended complaint, in which he named additional

defendants, asserting 20 claims alleging violations of his federal constitutional rights and rights

under PREA against those defendants, again seeking relief in the form of damages. Dkts. 85, 86.

Defendants moved to dismiss plaintiff's Amended Complaint.[1] The motion to dismiss is

analyzed concerning each claim, below.

## DISCUSSION

### I.    Standard of Review

Generally, review of a motion to dismiss under Federal Rule of Civil Procedure

("FRCP") 12(b)(6) is limited to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th

Cir. 2001). There are two exceptions: the incorporation-by-reference exception[2], and the judicial

---

[1] Plaintiff has filed a motion to continue this case (Dkt. 114) and a motion to strike defendants' current motion to dismiss (Dkt. 106). For the reasons set forth in a separate order (Dkt. 124), both of plaintiff's motions have been denied.

[2] Plaintiff has attached two documents to his Amended Complaint: a grievance document (dated 2-10-17), and two declarations (dated 5-8-17). Dkt. 86, pp. 23-26. When ruling on a motion to dismiss, the "general rule" is that the Court "must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." *Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In addition, plaintiff has referenced several other documents in the body of his complaint that he states are attached as exhibits, but which are not attached. *See* Dkt. 86, p. 6 (a grievance complaint and notification petition dated 12-30-16); p.10 (a declaration from defendant Dr. Miguel Balderama and a court order to force feed plaintiff dated 1-5-2017); pp. 11 and 18 (photographs of plaintiff after he was allegedly attacked by defendant Lt. L. Garcia and jail staff); p. 13 (a declaration of

1    notice exception[3]. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Khoja*

2    *v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018). The complaint must "contain

3    sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to

4    survive a motion to dismiss. *Wilhelm v. Rotman*, 680 F.3d 113, 1121 (9th Cir. 2012) (quoting

5    *Ashcroft v. Iqbal,* 680 U.S. 662, 678 (2009)).

6        A *pro se* complaint must be interpreted liberally. *Sause v. Bauer,* __ U.S. __, 138 S.Ct.

7    2561, 2563 (2018). Yet allegations that are merely conclusions of law such as "[t]hreadbare

8    recitals of the elements of a cause of action, supported by mere conclusory statements, do not

9    suffice." *Ashcroft v. Iqbal,* 680 U.S. at 678. All material factual allegations in the complaint

10   "are taken as admitted," and the complaint is to be liberally "construed in the light most

11   favorable" to the plaintiff. *Mangiaracina v. Penzone,* 849 F.3d 1191, 1195 (9th Cir. 2017). A *pro*

---

12   determination of probable cause, a "change of venue," and a newspaper article); p. 17 (a "Motion to Challenge

13   Conditions" by attorney Emily Gause), p. 18 (a clinical and forensic psychological evaluation by Dr. Anthony
     Eusanio, dated 3-26-17, and two incident reports, one from Sgt. Watkins, dated 2-24.2017, and another from
     defendant Officer A. Allen, dated 2-25-2017).

14       Mere reference to the existence of a document in a complaint, however, is insufficient to incorporate the

15   contents of the document. *United States v. Ritchie,* 342 F.3d 903, 908-09 (9th Cir. 2003); *Khoja v. Orexigen
     Therapeutics, Inc.,* 899 F.3d988, 1002 (9th Cir. 2018). Documents "whose contents are alleged in a complaint *and*

16   *whose authenticity no party questions*, but which are not physically attached" to the complaint may be taken into
     account. *Knievel,* 393 F.3d at 1076 (emphasis added). Some of the above documents plaintiff references in his

17   complaint may possibly be located elsewhere in the record. *See* Dkt. 6, p. 2 (grievance dated 12-30-2016); Dkt. 37,
     pp. 23-24 (photographs); Dkt. 72, pp. 14-25, Exhibit B (Motion to Review Jail Conditions signed by Emily M.
     Gause), and Exhibit A to the motion (photograph); Dkt. 75-1, pp. 1-14 (page 24 through 37 of a Clinical and

18   Forensic Psychological Evaluation re: Diminished Capacity, Date: 03-26-17, submitted by Anthony Eusanio, Ph.D.).
     There is uncertainty whether these are the same documents referenced on pages 6, 11, 17, and 18 of the Amended

19   Complaint. Nor would the Court be able to be certain on the current state of the record whether *no* party questions
     their authenticity. And there is no indication where the other documents plaintiff refers to are located or precisely

20   what they are. Further, it would be error for the Court to engage in fact-finding regarding a challenge under FRCP
     12(b)(6) to the sufficiency of a complaint based on an incorporated document. *Khoja,* 899 F.3d at 1003, 1006
     (noting the prohibition against resolving factual disputes at the pleadings stage).

21   [3] Plaintiff has referred to a lawsuit that is currently pending in this Court before Judge Robert J. Bryan: *Denton v.
     Pastor et. al,* No. 3:16-CV-05314-RJB-DWC. Dkt. 86, p. 1. He also references a pending appeal of a state criminal

22   matter. Dkt. 86, p. 15 (referring to *State v. Denton*, Case No. 219115-0-II). The Court may consider a document
     under ER 201 by judicial notice if it contains a fact that is not subject to reasonable dispute, generally known, or

23   "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.
     Evid. 201(B)(1)-(2); *see also Khoja*, 899 F.3d at 999. This Court may take judicial notice of matters of public
     record, "without converting a motion to dismiss into a motion for summary judgment." *Lee,* at 689; *Khoja,* 899 F.3d

24   at 999. The Court may not take judicial notice of disputed facts within public records. *Id.*

25

*se* complaint may be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

## II.    Plaintiff's Claims

Plaintiff has filed his lawsuit under 42 U.S.C. § 1983. Section 1983 creates liability for "[e]very person who, under color of" state law deprives "any citizen . . . or other person" of his or her "rights, privileges, or immunities" secured by the United States Constitution or other federal law. 42 U.S.C. § 1983. It allows plaintiffs to "bring federal constitutional and statutory challenges to actions by state and local officials." *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir.2006)).

To state a Section 1983 claim, a plaintiff must: (1) allege his or her federal constitutional or statutory rights were violated, and (2) show a person acting under color of state law deprived him or her of those rights. *Naffe*, *supra* at 1035-36. Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

### A.    Claim I

Plaintiff alleges defendants Sergeant Larry White, Officer I. Lee, and Officer K. Shanahan violated his constitutional rights, as well as his rights under the Prison Rape Elimination Act ("PREA"), by physically attacking and sexually assaulting plaintiff in December 2016 in his cell. Dkt. 86, pp. 2-4, 25. Plaintiff alleges this attack was done in retaliation for a civil lawsuit he had filed against Pierce County Jail Supervisors Sheriff Paul Pastor, Captain Marvin Spencer, Sergeant Jackie Caruso, and Lieutenant Charla James-Hutchison. *Id.* Plaintiff further alleges that as a result of the attack, he suffered physical and emotional injuries. *Id.*

1           1.   <u>Allegations re: attack and sexual assault</u>

2      Defendants do not move to dismiss plaintiff's allegations regarding the attack and sexual

3 assault by defendants White, Lee, and Shanahan. That portion of plaintiff's Claim I therefore is

4 not deficient and should **NOT BE DISMISSED**.

5           2.   <u>Allegations re: PREA</u>

6      The portion of plaintiff's Claim I that is based on PREA should be **DISMISSED**, given

7 the Court's prior order dismissing all of plaintiff's claims based on that statute, as there is no

8 express or implied private remedy under PREA. Dkt. 79.

9           3.   <u>Allegations re: lack of hand-held video recorder</u>

10      Plaintiff further alleges that defendant White violated his constitutional rights by opening

11 his cell door without a handheld video camcorder, and that defendants Pastor, Patti Jackson, and

12 B. Davis violated his constitutional rights and rights under PREA by: (1) failing to protect him

13 due to the Pierce County Jail having a policy banning surveillance cameras; and (2) failing to act

14 on plaintiff's PREA complaint against defendant White. Dkt. 86, p. 4.

15      Defendants assert that plaintiff has no constitutional right have entries into his cell by jail

16 staff video recorded. Dkt. 104, p. 9. Defendants do not directly address plaintiff's allegations

17 against defendants Jackson, Pastor, and Davis regarding the no surveillance cameras policy. *Id.*

18 Plaintiff alleges that he was attacked and sexually assaulted by defendants White, Lee, and

19 Shanahan due to the no surveillance cameras policy, that he notified defendants Jackson, Pastor,

20 and Davis of the sexual assault, and that defendants Jackson, Pastor, and Davis failed to protect

21 him as a result of the surveillance cameras ban. Dkt. 86, p. 4.

22      When challenges to conditions of confinement are brought by pretrial detainees, "the

23 proper inquiry is whether those conditions amount to punishment of the detainee". *Bell v.*

24

25

REPORT AND RECOMMENDATION - 5

1    *Wolfish*, 441 U.S. 520, 535-537 and n.16 (1979)). Not every inconvenience, restriction, or other

2    unfavorable condition that may occur in pretrial detention, however, "amounts to 'punishment'

3    in the constitutional sense." *Id.* at 537. Whether a condition amounts to punishment turns on

4    whether that condition is "imposed for the purpose of punishment or whether it is but an incident

5    of some other legitimate governmental purpose." *Id.* at 538.

6            Actions that are taken with an "expressed intent to punish" can amount to punishment.

7    *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S.Ct. 2466, 2473 (2015) (quoting *Bell*, 441 U.S. at

8    538). Absent an expressed intent to punish, though, a pretrial detainee "can nevertheless prevail

9    by showing that the [official's] actions are not 'rationally related to a legitimate nonpunitive

10   governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.*

11   (quoting *Bell*, 441 U.S. at 561). Further, a pretrial detainee need not provide "proof of intent (or

12   motive) to punish," but instead can prevail on his or her claim by providing "only objective

13   evidence" that the challenged action has no rational relation to a legitimate governmental

14   objective or that it is excessive in relation thereto. *Id.* at 2473-74.

15           Even though conditions of confinement claims brought by pretrial detainees arise under

16   the Due Process Clause, the guarantees of the Eighth Amendment "provide a minimum standard

17   of care for determining rights as a pretrial detainee." *Gordon v. Cty. of Orange*, 888 F.3d 1118,

18   1122 (9th Cir. 2018). Nevertheless, because deliberate indifference to health or safety claims by

19   pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause, the same

20   objective evidence standard applies to such claims. *Id.* at 1123-24; *Frost v. Agnos*, 152 F.3d

21   1124, 1128 (9th Cir. 1998).

22           To satisfy the objective standard for deliberate indifference claims, the deprivation

23   alleged "must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834

24

25

REPORT AND RECOMMENDATION - 6

1    (1994) (citation omitted). That is, the prison official's "act or omission must result in the denial

2    of 'the minimum civilized measure of life's necessities.'" *Id.* For claims based on failure to

3    prevent harm, the inmate also must show he or she was "incarcerated under conditions posing a

4    substantial risk of serious harm." *Id.*

5        Qualified immunity shields government officials from money damages, unless the

6    plaintiff "pleads facts showing (1) that the official violated a statutory or constitutional right, and

7    (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-*

8    *Kidd*, 563 U.S. 731, 740 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The

9    Court must determine whether "[t]aken in the light most favorable to the party asserting the

10   injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v.*

11   *Katz*, 533 U.S. 194, 201 (2001).

12       As to the question of "clearly established law", an official's conduct "violates clearly

13   established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are]

14   sufficiently clear' that every 'reasonable official would have understood that what he is doing

15   violates that right.'" *al-Kidd*, 131 U.S. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635,

16   640 (1987)). The burden is on the plaintiff to show that the statutory or constitutional right that

17   plaintiff claims was allegedly violated was a clearly established right under law that existed at

18   the time of the alleged acts or omissions. *Shafer v. County of Santa Barbara*, 868 F.3d 1110,

19   1118 (9th Cir. 2017). This means the plaintiff must point to a case "where an officer acting under

20   similar circumstances . . . was held to have violated [the constitutional right at issue]." *White v.*

21   *Pauly,* __ U.S. __, 137 S.Ct. 548, 552 (2017).

22       "[T]he very action in question" need not "have previously been held unlawful" for the

23   law to be clearly established. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing

24

25

1    *Creighton*, 483 U.S. at 640); *see also Delker v. Maass*, 843 F.Supp. 1390, 1397 (D. Ore. 1994)

2    ("The precise facts need not have been previously determined, so long as the legal principle is

3    clearly established and a reasonable public official would realize that his conduct violated that

4    rule of law."). Nevertheless, "[t]he right the official is alleged to have violated must be made

5    specific in regard to the kind of action complained of for the constitutional right at issue to have

6    been clearly established." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1100-

7    01 (9th Cir. 1995) (citing *Anderson*, 483 U.S. at 639-40).

8            Qualified immunity will be defeated only if the government official "*knew or reasonably*

9    *should have known* that the action he took within his sphere of official responsibility would

10   violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious*

11   *intention* to cause a deprivation of constitutional rights or other injury.'" *Harlow*, 457 U.S. at 815

12   (emphasis in the original). Indeed, "[t]he law must have been clear enough that "*every* reasonable

13   official" would know he or she was violating the plaintiff's rights. *Felarca v. Birgeneau*, 891

14   F.3d 809, 816 (9th Cir. 2018) (emphasis in the original). The court first looks to binding

15   precedent to determine whether the law was, or was not, clearly established at the time of the

16   acts or omissions in question. *Ioane v. Hodges,* -- F.3d -- , No 16-16089, Slip. Op. at *6 (9th Cir.

17   2018).

18           Plaintiff has not shown that at the time of the alleged attack and sexual assault, the law

19   was clearly established so that any of the above named defendants knew or reasonably should

20   have known that the lack of a handheld video camcorder upon entering plaintiff's cell or that the

21   absence of surveillance cameras in the jail, violated his constitutional rights. The only similar

22   case of which this court is aware is: *Arline v. Janda,* No. 11-CV-2450 JLS (NLS), slip op. at *6

23   (S.D. Cal. 2013) (Court dismissed a claim by a state prison inmate, alleging that lack of a

24

25

REPORT AND RECOMMENDATION - 8

surveillance camera in general population main yard created a risk of serious harm, and the risk of serious harm was consciously disregarded by prison officials in violation of the Eighth Amendment). That opinion of the United States District Court for the Southern District of California is not binding precedent, and the facts are not close enough to cover this case in any event. As such, those defendants may not be held liable for damages regarding any such lack or absence, and therefore that portion of Claim I concerning video and/or surveillance cameras should be **DISMISSED**.

As to defendants' alleged failure to act on plaintiff's PREA complaint, for the reasons just stated concerning lack of a private remedy under PREA, that portion of Claim I is deficient and therefore should be **DISMISSED**.

## B.  Claim II

Plaintiff alleges defendants White, Lee, and Shanahan physically attacked and sexually assaulted plaintiff, resulting in emotional and physical injuries to plaintiff, which was done in retaliation for plaintiff filing a civil lawsuit against Pierce County Jail supervisors. Dkt. 86, p. 4. As defendants point out, this claim is duplicative of the physical attack and sexual assault claim in Claim I and therefore should be **COMBINED WITH CLAIM I and DISMISSED AS A SEPARATE CAUSE OF ACTION**.

## C.  Claim III

Plaintiff alleges defendants James-Hutchison, Caruso, Pastor, and Marvin Spencer seized his legal documents, prohibited him from accessing Pierce County Jail's legal books and legal computer, and prevented him from sending and receiving mail, in violation of his right to file grievances and access the courts to continue his civil lawsuit. Dkt. 86, p. 5. Plaintiff further alleges these named defendants participated in and directed their staff to "brutally attack" him for

1    filing a section 1983 lawsuit against them. *Id.*

2         To establish liability under Section 1983, plaintiff must show defendants personally

3    participated in the alleged deprivation of federal constitutional or statutory rights. *Jones v.*

4    *Williams*, 297 F.3d 930, 934 (9th Cir. 2002). That is, he must allege defendants, through their

5    own individual actions, violated those rights. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069

6    (9th Cir. 2012).

7         A person deprives another "of a constitutional right, within the meaning of Section 1983,

8    if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act

9    which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]."

10   *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original) (citation omitted).

11        A supervising official may be liable, furthermore, "only if either (1) he or she was

12   personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists

13   'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca v.*

14   *Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207

15   (9th Cir. 2011)). The "requisite causal connection" can be established by the official either by

16   "setting in motion a series of acts by others, or by knowingly refusing to terminate a series of

17   acts by others, which the supervisor knew or reasonably should have known would cause others

18   to inflict a constitutional injury." *Id.* at 820 (quoting *Starr*, 652 F.3d at 1207-08).

19        In other words, "[t]here is no respondeat superior theory of liability under section 1983,"

20   and a state supervisory official may not be held liable under section 1983, "merely for being

21   present at the scene of a constitutional violation or for being a member of the same operational

22   unit as a wrongdoer. *Id.*

23        As defendants point out, plaintiff fails to assert any specific facts to support his Claim III

24

25
     REPORT AND RECOMMENDATION - 10

1    allegations that they seized his legal documents, prohibited him from accessing legal resources,

2    or prevented him from sending and receiving mail. As to the allegation regarding participating in

3    and instructing their staff to "brutally attack" him, plaintiff likewise provides no specific facts to

4    link those defendants either to the attack and sexual assault alleged in Claims I and II, or to any

5    other particular alleged attack. Accordingly, Claim III is deficient and therefore should be

6    **DISMISSED**.

7         D.  **Claim IV**

8         Plaintiff alleges defendants Jones and Lt. Pero violated his constitutional rights by using

9    certain "Security-Alert Modifications" to punish/retaliate against him for filing a civil lawsuit

10   against Pierce County Jail Supervisors. Dkt. 86, pp. 5-6. Defendants do not move to dismiss this

11   claim, and therefore Claim IV should **NOT BE DISMISSED**.

12        E.  **Claim V**

13        Plaintiff alleges defendants Pastor, Jackson, Spencer, and Davis violated his

14   constitutional rights and rights under PREA by creating a ban on/prohibition against surveillance

15   cameras inside all Pierce County Jail units to record video and audio to prevent, detect, protect

16   and respond to prison rape. Dkt. 86, pp. 6-7. By not installing such cameras, plaintiff alleges,

17   these defendants failed to protect him from being attacked and sexually assaulted by defendants

18   White, Lee, and Shanahan in December 2016. *Id.* Plaintiff further alleges he was assaulted by

19   defendant White because of Pierce County Jail's custom and policy of allowing jail staff to enter

20   inmates' cells, attack the inmates, and get away with it due to the ban on surveillance cameras.

21   *Id.*

22        First, again for the reasons discussed above, plaintiff lacks a private remedy under PREA,

23   and therefore that aspect of Claim V should be **DISMISSED**.

24

25

REPORT AND RECOMMENDATION - 11

Defendants argue jail officials have no obligation to employ "ubiquitous" surveillance cameras that record audio and video, and are aware of no authority for such an obligation. They also argue that having such cameras could violate the rights of other inmates, that plaintiff has failed to identify specific actions undertaken by them to establish they knew such a policy ban would create serious risk to his safety, and that a requirement of this type would be contrary to the broad discretion and deference accorded officials in operating the jail. Defendants thus argue Claim V should be dismissed for these reasons, as well as on the basis that they are entitled qualified immunity.

As with the surveillance cameras portion of Claim I, defendants are entitled to qualified immunity. Plaintiff has not identified a case where an officer acting or failing to act under similar circumstances was held to have violated the Fourteenth Amendment. *Shafer v. County of Santa Barbara,* 868 F.3d 1110, 1117 (9th Cir. 2017). Therefore, plaintiff has not shown that at the time of the alleged attack and sexual assault, the law was sufficiently clearly established such that defendants Jackson, Spencer, or Davis knew or reasonably should have known that a ban on or absence of surveillance cameras in Pierce County Jail violated plaintiff's constitutional rights. *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (the law must have been clear enough that "*every* reasonable official" would know he or she was violating the plaintiff's rights.) (emphasis in the original).

As such, defendants Pastor, Jackson, Spencer, and Davis may not be held liable for the policy ban on surveillance cameras, and therefore Claim V should be **DISMISSED**.

## F. **Claim VI**

Plaintiff alleges defendants Pastor, Jackson, and Spencer violated his constitutional rights by instructing their staff to issue only one electric razor to be shared among five jail units, as a

result of which plaintiff alleges he caught a virus/contracted an infectious disease and developed a rash on his face. Dkt. 86, p. 7.

Defendants argue plaintiff fails to allege facts sufficient to assert a claim against any of them, but instead merely improperly asserts a theory of respondeat superior. As noted above, a supervising official may be liable under section 1983, if either "(1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca*, 891 F.3d at 819-20 (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

The "requisite causal connection" for supervisory liability can be established either by the official "setting in motion a series of acts by others," or by the official "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 820 (quoting *Starr*, 652 F.3d at 1207-08). Here, plaintiff alleges defendants Pastor, Jackson, and Spencer instructed their staff to issue only the one razor. In other words, plaintiff alleges those defendants set in motion a series of acts by others leading to the alleged constitutional violations. As such, he has sufficiently alleged the requisite causal connection.

Defendants argue that nevertheless, plaintiff's claim fails to rise to the level of a serious medical need. They argue that at most plaintiff's claim rises to the level of negligence, a level that falls short of that necessary to establish an Eighth Amendment serious medical needs claim, and that plaintiff is unable to produce evidence sufficient to show that defendants acted with deliberate indifference, in that they knew of and disregarded an excessive risk to plaintiff's health and safety.

As noted above, when challenges to conditions of confinement are brought by pretrial

1   detainees, "the proper inquiry is whether those conditions amount to punishment," under the Due

2   Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-37 and n.16

3   (1979). A pretrial detainee need not prove intent or motive to punish to prevail, but instead can

4   provide "objective evidence that the challenged governmental action is not rationally related to a

5   legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v.*

6   *Hendrickson*, 135 S.Ct. 2466, 2473-74 (2015) (quoting *Bell*, 441 U.S. at 538).

7          Claims for violations of the right to adequate health care brought by pretrial detainees,

8   therefore, "must be evaluated under an objective deliberate indifference standard." *Gordon v.*

9   *Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).To demonstrate such a violation, the

10  detainee must show:

11             (i) the defendant made an intentional decision with respect to the conditions
               under which the plaintiff was confined; (ii) those conditions put the plaintiff at
12             substantial risk of suffering serious harm; (iii) the defendant did not take
               reasonable available measures to abate that risk, even though a reasonable
13             official in the circumstances would have appreciated the high degree of risk
               involved—making the consequences of the defendant's conduct obvious; and
14             (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

15  *Id.* In regard to the third element, the defendant's conduct must be "objectively unreasonable."

16  *Gordon*, 888 F.3d at 1125. However, "mere lack of due care" by the defendant is insufficient to

17  establish liability. *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir.

18  2016). Rather, the detainee must "prove more than negligence," although "less than subjective

19  intent," i.e., "something akin to reckless disregard." *Id.*

20         To establish that a jail official's failure to respond adequately to an inmate's medical

21  condition in violation of the Eighth Amendment, plaintiff must show his medical condition is

22  "objectively a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2nd Cir. 2003). Seriousness of

23  the condition may be present where there is:

24

25

REPORT AND RECOMMENDATION - 14

> . . . The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . .

*McGuckin*, 974 F.2d at 1059-60; *see also Brock*, 315 F.3d at 162.

Plaintiff's allegations that defendants Pastor, Jackson, and Spencer instructed their staff to supply the inmates of three jail units – which plaintiff further alleges totaled some 100 inmates – with only one electric razor to be shared among those inmates, meets the first element. Further, the second element is met, given that plaintiff alleges he contracted a virus and developed a rash "with bumps and puss" (Dkt. 86, p. 7), would be one worthy of comment or treatment and thus meets the second element. Plaintiff's additional allegation that the razor was "unsanitized", in combination with the rational presumption that an objectively reasonable jail official would know that an unsanitized razor shared by some 100 inmates would present serious risk to inmate health, and that failure to take measures to abate that risk meets the third and fourth elements. As such, Claim VI should **NOT BE DISMISSED**.

### G.  Claim VII

Plaintiff alleges defendants Pastor, Jackson, and Spencer violated his constitutional rights by banning him from having certain personal items – including items of clothing, writing utensils and paper, cough drops, and combs and picks – while in administrative segregation. Dkt. 86, p. 8. In particular, plaintiff alleges defendants acted with deliberate indifference by denying him access to items of clothing such as thermal "tops and bottoms" in light of the jail's "freezing cold temperature" during winter. *Id.*

Defendants move to dismiss these allegations based on "[t]he same arguments made as to Claim VI." Dkt. 104, p. 13. For purposes of review under CR 12(b)(6), taking as true plaintiff's allegation that he is being denied adequate clothing to keep him warm during the freezing cold

1    temperature of winter -- these conditions would plausibly put him at serious risk to his health,

2    which would be sufficient to state a cause of action under the first three elements for establishing

3    deliberate indifference. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (finding that

4    "adequate heating" is guaranteed by the Eighth Amendment, but denying the plaintiff's claim

5    because he alleged only that the average temperatures in his cell tended to be "well above" or

6    "well below" room temperature, suggesting "only that the temperature was not comfortable").

7        Plaintiff, however, has not alleged how frequently he experienced "freezing cold

8    temperature" in the jail, what parts of the jail were kept at such a temperature, what exactly

9    plaintiff means by "freezing cold temperature" in terms of actual temperature, and/or whether he

10   personally experienced that temperature. Nor has plaintiff alleged the denial of adequate clothing

11   was instituted for the purpose of punishing him. Claim VII thus is deficient and should be

12   **DISMISSED**.

13       **H.  Claim VIII**

14       Plaintiff alleges defendants Pastor, Jackson, James-Hutchison, and Jones violated his due

15   process rights by placing him in administrative segregation by not having either a "disciplinary

16   board" or an "assigned disciplinary hearings officer." Dkt. 86, pp. 8-9. Plaintiff further alleges he

17   was deprived of other procedural safeguards such as: the right to a hearing; a written statement of

18   the reasons he was found guilty; the ability to call witnesses; a fair and impartial decision-maker;

19   and an audio recording of the hearing. *Id.* In addition, plaintiff alleges the defendants placed him

20   in solitary confinement despite knowing he had mental health diagnoses. *Id.* at p. 9.

21       Defendants argue these allegations are the same as those plaintiff has made in a separate

22   lawsuit filed with the Court. Dkt. 104, p. 13 (citing *Denton v. Pastor et al*, Case No. 3:16-cv-

23   05314-RJB). This Court may take judicial notice of its own files and records from a different

24

25

1    case where the same parties are involved. *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S.

2    147, 157 (1969). The Court may take judicial notice concerning documents that are matters of

3    public record, "without converting a motion to dismiss into a motion for summary judgment."

4    *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001). The Court may not take judicial

5    notice of disputed facts within public records. *Id.*

6        It is not clear, however, that the allegations in that case are the same as those plaintiff

7    raise here. For example, plaintiff's allegations in that case appear to relate to the loss of good

8    time credits, while no such allegation is made here. *See* Case No. 3:16-cv-05314-RJB, Dkt. 99, p.

9    6.

10       For the foregoing reasons, the Court therefore finds plaintiff's Claim VIII should **NOT**

11   **BE DISMISSED**. Further, because there are insufficient facts at this point in the proceedings to

12   evaluate what process was due plaintiff regarding placement in administrative segregation,

13   whether defendants are entitled to qualified immunity cannot be determined at this time.

14   **I.    Claim IX**

15       Plaintiff alleges defendants Pastor, Jackson, and Spencer violated his constitutional rights

16   by creating a ban on outside recreation pretrial detainees in administrative segregation. Dkt. 86,

17   p. 9. Defendants move to dismiss this claim on the basis that plaintiff has no constitutional right

18   to outside segregation for behavioral violations.

19       First, nothing in plaintiff's Amended Complaint indicates he is in administrative

20   segregation for behavioral violations. Second, defendants offer no authority for the proposition

21   that pretrial detainees have no constitutional right to outside recreation while in administrative

22   segregation. And it is recognized that "some form of regular outdoor exercise is extremely

23   important to the psychological and physical well-being." *Spain v. Procunier*, 600 F.2d 189, 199

24

25

REPORT AND RECOMMENDATION - 17

(9th Cir. 1979); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1211-12 (9th Cir. 2008) ("Exercise is one of the basic human necessities protected by the Eighth Amendment. Moreover, the Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective.") (internal citations omitted).

While denial of recreation "for a short period" is not *per se* unconstitutional, plaintiff alleges he was in administrative segregation for at least 10 months. *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) (13 days without recreation not unconstitutional); *see also Pierce*, 526 F.3d at 1212 ("providing the equivalent of slightly less than thirteen minutes of exercise a day does not give meaningful protection to this basic human necessity"). In addition, given that plaintiff appears to be alleging he has been denied all outside recreation for the entire time he is in administrative segregation, in light of the above Ninth Circuit precedent, the facts are insufficient to fully consider the defense of qualified immunity at this time. Accordingly, Claim IX is not should **NOT BE DISMISSED**.

### J.  Claim X

Plaintiff alleges defendant Dr. Miguel Balderama was negligent in not allowing Pierce County Jail nursing staff to administer a court-order nutritional drink due to plaintiff being on a hunger strike, placing plaintiff's life in danger. Dkt. 86, p. 10. Plaintiff further alleges defendant Balderama instructed jail staff instead to administer the nutritional drink, when defendant Balderama knew the actions of the jail staff was the reason he went on a hunger strike in the first place. *Id.* Plaintiff alleges he was afraid the jail staff would poison him. *Id.*

As defendants point out, however, plaintiff only asserts that defendant Balderama was negligent in not allowing the jail nursing staff to administer the nutritional drink. This is insufficient to assert a plausible deliberate indifference claim. *See Gordon*, 888 F.3d at 1125

1  (more than mere negligence must be proven). And because it is clear that a showing of more than

2  negligence is required, defendants are entitled to qualified immunity. Claim X thus should be

3  **DISMISSED**.

4      **K.  Claim XI**

5      Plaintiff alleges defendants Pastor, Smith, Alexander, and James-Hutchison violated his

6  constitutional rights by prohibiting him from having and confiscating from him certain books,

7  newspapers, magazines, and catalogues, including some legal materials, while being housed in

8  administrative segregation. Dkt. 86, p. 10-11.

9      Defendants argue plaintiff's claim should be dismissed in light of the Supreme Court's

10  ruling in *Beard v. Banks*, 548 U.S. 521, 530-33 (2006), which upheld a prison policy of denying

11  newspapers, magazines, and photographs to inmates held in administrative segregation due to

12  their behavioral problems. Defendants also point to the Court's determination in Case No. 3:16-

13  cv-05314-RJB that rejected the same claim plaintiff raises here. *See id.*, Dkts. 155, 166.

14      The Amended Complaint, however, does not state that the basis upon which plaintiff was

15  placed in administrative segregation was actual behavioral problems. Accordingly, it cannot be

16  said at this time that Claim XI is deficient. For the same reason, whether the defendants are

17  entitled to qualified immunity also cannot properly be determined at this time. Claim XI,

18  therefore, should **NOT BE DISMISSED**.

19      **L.  Claim XII**

20      Defendants do not move to dismiss this claim. Accordingly, Claim XII should **NOT BE**

21  **DISMISSED**.

22      **M. Claim XIII**

23      Plaintiff alleges defendants Pastor and Caruso violated his constitutional rights by

24

25

REPORT AND RECOMMENDATION - 19

1    creating a "security-alert policy" that deprived him of access to the courts, by not allowing him

2    to have legal books and materials or access to a legal computer. Dkt. 86, pp. 11-12. Specifically,

3    plaintiff alleges this caused him to lose a criminal trial in which he was representing himself.

4    Dkt. 86, p. 11. Defendants argue plaintiff has not asserted sufficient facts that rise to the level of

5    a constitutional violation. The Court disagrees.

6          Inmates have "a constitutional right of access to the courts." *Cornett v. Donovan*, 51 F.3d

7    894, 897 (9th Cir. 1995). That right "requires prison authorities to assist inmates in the

8    preparation and filing of meaningful legal papers" by providing them with "adequate law

9    libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343,

10   346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).

11         Plaintiff was a pretrial detainee awaiting trial on criminal charges at the time he alleges

12   he was denied access to legal resources. The extent to which the access to the courts rights

13   created by the Supreme Court in *Bounds* and *Lewis* extend to pretrial detainees is unsettled. *See*

14   *Milton v. Morris*, 767 F.2d 1443, 1446, n.2 (9th Cir. 1985); *Kaiser v. Cnty. of Sacramento*, 780

15   F.Supp. 1309, 1313 (E.D. Cal. 1991). However, the right of access to the courts has been limited

16   to direct criminal appeals, *habeas corpus* proceedings, and civil rights actions under section

17   1983. *Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) (citing

18   *Lewis*, 518 U.S. at 354-55).

19         Plaintiff's claim alleges denial of access to legal resources in relation to representing

20   himself at his criminal trial. In such a case, the Sixth Amendment right to self-representation

21   controls. *Milton*, 767 F.2d at 1446. A criminal defendant has the right "to reject court-appointed

22   counsel and conduct his own defense." *Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir. 1989). This

23   "necessarily includes and is premised upon" the defendant's right "to prepare a defense." *Taylor*,

24

25

880 F.2d at 1047.

The Ninth Circuit has held that "at a minimum" at least "some access to materials" are "fundamental to a meaningful right of representation." *Milton*, 767 F.2d at 1446. Without access to law books or "other tools necessary to prepare a defense," an incarcerated defendant "may not meaningfully exercise his right to represent himself." *Taylor*, *supra* at 1047 (quoting *Milton*, *supra* at 1446). Such access is not unlimited. *Milton*, *supra* at 1446 (security issues and abuse of the judicial process by defendants "may require special adjustments"). Nevertheless, a criminal defendant may not be "unreasonably hinder[e]d" in his efforts to prepare his own defense. *Id.* at 1446-47.

Plaintiff alleges he was "never" allowed to have access to the jail's legal books, legal materials, or legal computer. Dkt. 86, pp. 11. He asserts that he was not allowed to obtain his own legal resources. *Id.* at 11-12. Although plaintiff states he was denied such access due to the jail's "security alert policy" (*id.* at 11), there is no indication in the Amended Complaint or the documents attached thereto as to why that policy was in place, and what, if any, security issues there may have been to warrant restricting plaintiff's access to those legal books or other tools necessary for him to represent himself.

The opinions in *Milton* and *Taylor* indicate that while security issues may provide a basis for certain limits on a criminal defendant's access, complete denial of all access to legal books or other tools is likely to be constitutionally infirm. *Milton*, 767 F.2d at 1446 ("An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense."). Further, because it was clearly established at the time of the events in question that at least "some access" to legal materials was required, defendants are not entitled to qualified immunity at this stage of the proceedings.

1    Accordingly, Claim XIII should be **NOT BE DISMISSED**.

2    **N.  Claim XIV**

3    Plaintiff alleges defendants Pastor, Jackson, Captain T. Genga, and Martha Chambers

4    Karp violated his constitutional rights by creating a security-alert policy that deprived him of his

5    right to a full hour of recreation. Dkt. 86, p. 12. Specifically, plaintiff alleges defendants forced

6    him to choose between an hour out for recreation or taking his shower, shave and clean himself

7    during the same time period. *Id.* Defendants argue plaintiff has no constitutional right to a full

8    hour of recreation, pointing to their arguments regarding Claim IX.

9    The Ninth Circuit has not identified a constitutional minimum amount of time that is

10   constitutionally required for outdoor recreation; the Court has held "the equivalent of slightly

11   lees than thirteen minutes of exercise a day does not give meaningful protection" (*Pierce*, 526

12   F.3d at 1212). It is not clear where the line should be drawn -- yet access to some amount of

13   regular outdoor exercise is required. *Id.* at 1211-12; *Spain*, 600 F.2d at 199. To the extent that

14   plaintiff asserts he is being forced to shower, shave and clean himself during the one hour of

15   recreation he is given, it is uncertain how much time, if any, that would leave him for outdoor

16   exercise.

17   Accordingly, defendants have not shown Claim XIV should **NOT BE DISMISSED**.

18   **O.  Claim XV**

19   Plaintiff alleges defendants Pastor conspired with defendants Mark Lindquist and Terry

20   Lane, both prosecutors for Pierce County, to re-charge plaintiff with the crime of custodial

21   assault to teach him lesson for continuing to cause problems in Pierce County Jail, and retaliate

22   against him for filing a civil lawsuit. Dkt. 86, p. 13.

23

24

25

1    Defendants argue defendants Lindquist and Lane are absolutely immune from liability for

2    their charging and prosecution decisions. Prosecutors are entitled to absolute immunity from

3    liability for damages under 42 U.S.C. § 1983 for "quasi-judicial activities taken within the scope

4    of their authority." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (citing *Imbler v.*

5    *Pachtman*, 424 U.S. 409, 430-31 (1976)). If a prosecutor "acts as an advocate" in initiating a

6    prosecution or presenting the state's case, then he or she is entitled to absolute immunity. *Ybarra*

7    *v. Reno Thunderbird Mobile Home Villag*e, 723 F.2d 674, 678 (9th Cir. 1984) (quoting *Imbler*,

8    424 U.S. at 431).

9    Accordingly, defendants Lindquist and Lane are absolutely immune from liability for

10    their alleged role in re-charging plaintiff. *See Van de Kap v. Goldstein*, 555 U.S. 335, 343 (2009)

11    ("absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding");

12    *Imbler*, 424 U.S. at 431 ("in initiating a prosecution and in presenting the State's case, the

13    prosecutor is immune from a civil suit for damages under [section] 1983"); *Ashelman*, 793 F.2d

14    at 1078 ("a conspiracy between judge and prosecutor to predetermine the outcome of a judicial

15    proceeding, while clearly improper, nevertheless does not pierce the immunity extended to

16    judges and prosecutors"). Those defendants therefore should be **DISMISSED**.

17    Although defendants do not specifically address the remaining conspiracy claim against

18    defendant Pastor, the undersigned finds that claim should be dismissed as well. A claim that state

19    officials conspired to deprive plaintiff of his constitutional rights is cognizable under 42 U.S.C. §

20    1983. *Duff v. Coughlin*, 794 F. Supp. 521, 525 (S.D.N.Y. 1992); *see also Degrassi v. City of*

21    *Glendora*, 207 F.3d 636, 647 (9th Cir. 2000).

22    To support such a claim, plaintiff is required to demonstrate the defendants "acted in a

23    willful manner, culminating in an agreement, understanding or 'meeting of the minds'" in

24

25

REPORT AND RECOMMENDATION - 23

violation of his constitutional rights. *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)

(quoting *Duff*, 794 F. Supp. at 525). Mere "[c]onclusory, vague and general allegations of

conspiracy" are not sufficient. *Id.*; *Radcliffe v. Rainbow Construction Co.*, 254 F.3d 772, 783-84

(9th Cir. 2001) (bare allegation of joint action will not suffice); *Degrassi*, 207 F.3d at 647 (facts

must be alleged). Each defendant "must at least share the common objective of the conspiracy."

*United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989).

Here, plaintiff asserts defendant Pastor conspired with defendants Lindquist and Lane. He

has put forth no facts to show there was an actual meeting of the minds to deprive him of his

constitutional rights. Claim XV therefore is deficient for this reason as well, and should be

**DISMISSED**.

## P.  Claim XVI

Plaintiff alleges defendants Alexander and Brasswell violated his constitutional rights by

refusing to give him his full kosher meal diet – and the refusal was in retaliation for filing a civil

lawsuit against Pierce County Jail. Dkt. 86, p. 14. Plaintiff also alleges kosher meals are not

properly sealed to prevent contamination. *Id.*

Defendants argue plaintiff was in administrative segregation for conduct violations, and

therefore they were entitled to withhold from plaintiff those portions of his meal that contained

contraband or material that could be made into contraband. Dkt. 104 at 17. They assert that

contraband includes items such as the plastic containers in meal packets that could be used to

make weapons. *Id.* However, plaintiff's Amended Complaint does not allege he was in

administrative segregation for conduct violations at the time(s) he was denied his full kosher

meal diet. Nor is there any evidence before the Court at this time as to whether anything in the

1   meal packets can in fact be used to make weapons, such that defendants had a legitimate security

2   interest in removing those items.

3          Plaintiff, furthermore, has alleged other food-related items, such as bagels and regular

4   butter that do not on the surface appear to present any specific security concerns, were removed

5   from his kosher meal as well. Dkt. 86 at 14. Nor do defendants argue or show plaintiff has no

6   sincerely held religious belief that he requires pre-packaged kosher meals, *Ward v. Walsh*, 1 F.3d

7   873, 877 (9th Cir. 1993) (inmates "have the right to be provided with food sufficient to sustain

8   them in good health that satisfies the dietary laws of their religion"), that denial of access thereto

9   does not burden the practice of his religion (*Freeman v. Arpaio*, 125 F.3d 732, 736-37 (9th Cir.

10  1997)), or that any of the other factors that the Court must consider to determine if the burden on

11  plaintiff's practice of his religion is rationally related to a legitimate penological interest have

12  been satisfied (*Turner v. Safley*, 482 U.S. 78, 89-91, (1987)).

13         Claim XVI, therefore, should **NOT BE DISMISSED**.

14  **Q.  <u>Claim XVII</u>**

15         Plaintiff alleges defendants Pastor, Jackson, Spencer, and Karr violated his constitutional

16  rights by depriving him from being able to request a grievance form to allow him to exhaust his

17  administrative remedies. Dkt. 86, p. 14. Specifically, plaintiff alleges the policy of Pierce County

18  Jail is to require inmates to file a "kite" requesting the form from the jail sergeant, who gets to

19  decide who should or should not be allowed to receive the form. *Id.* Plaintiff further alleges he

20  has filed numerous kites to defendants Jackson and Karr asking them to address the situation, but

21  they have refused to respond to his kites. *Id.* at pp. 14-15.

22         Inmates have a First Amendment right to petition the government for redress of

23  grievances. *Cruz v. Beto*, 405 U.S. 319, 321 (1972); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th

24

25

1    Cir. 1995). Plaintiff, however, has failed to set forth sufficient facts to show any of the above

2    named defendants interfered with that right in this case. First, it is not clear they are responsible

3    for the policy or can change it in response to plaintiff's requests. Second, plaintiff has not set

4    forth any facts to show that he has requested a grievance and been denied access thereto, that to

5    the extent jail sergeants have the authority to deny requests for grievance forms for illegitimate

6    reasons jail they have done so, or that any of the named defendants instructed jail sergeants to

7    reject kite requests either in regard to plaintiff or generally. *Felarca v. Birgeneau*, 891 F.3d 809,

8    820 (9th Cir. 2018) (no *respondeat superior* liability under section 1983).

9         Accordingly, Claim XVII is deficient and should be **DISMISSED**.

10   **R.  Claim XVIII**

11        Plaintiff alleges defendants Sergeant Duroy and B. Moore violated his constitutional

12   rights by physically attacking and injuring him in May 2017. Dkt. 86, pp. 15, 25-26. Defendants

13   do not move to dismiss these allegations and thus this portion of Claim XVIII is **NOT**

14   **DISMISSED**.

15        Plaintiff further alleges that he was attacked as a result of Pierce County Jail's policy of

16   not allowing the use of surveillance cameras in jail hallways or units. Dkt. 86, p. 15. However,

17   for the same reasons discussed in regard to Claim I, while this allegation could be sufficient to

18   assert a deliberate indifference to inmate safety claim, he has not demonstrated he has a clearly

19   established right to such use of surveillance cameras. The above named defendants are thus

20   entitled to qualified immunity, and therefore this portion of Claim XVIII should be **DISMISSED**

21   on this basis.

22   **S.  Claim XIX**

23

24

25

1        Plaintiff alleges defendants Pastor, Jackson, Karr, Pero, Jones, and James-Hutchison

2    violated his constitutional rights by housing him in administrative segregation as a form of

3    punishment/retaliation, and by placing him in solitary confinement despite knowing about his

4    mental health diagnoses. Dkt. 86, p. 16. Specifically, plaintiff alleges he was placed in solitary

5    confinement for 17 months without any outside recreation, resulting in various mental health

6    adverse effects, such as anxiety attacks, suicidal thoughts, and self-mutilation. *Id.* Plaintiff also

7    alleges he was deprived of access to books, newspapers, magazines, and other (including legal)

8    materials while in administrative segregation. *Id.* at pp. 16-17.

9        Defendants argue these allegations were also made in Case No. 3:16-cv-05314-RJB, and

10   therefore is without merit for being duplicative. As already noted, however, the record is not

11   developed for the Court to determine whether the allegations plaintiff makes here are in fact the

12   same as those in his other case. Nevertheless, these allegations are **duplicative** of allegations

13   plaintiff made in **Claims VIII, IX, XI, and XIV** and therefore **Claim XIX should be combined**

14   **with those claims, and DISMISSED as a separate cause of action** on that basis.

15       **T.  Claim XX**

16        Plaintiff alleges defendants Pastor, Spencer, Duroy, and Allen violated his constitutional

17   rights by creating a no surveillance cameras policy that created an environment that encouraged

18   jail staff to attack pretrial detainees. Dkt. 86, p. 18. Plaintiff further alleges he was physically

19   attacked by defendant Allen in late February 2017, causing plaintiff to lose consciousness. *Id.*

20        Defendants argue the no surveillance cameras policy allegation should fail for the same

21   reasons they argue his previous surveillance cameras policy allegations fail as discussed above.

22   The undersigned agrees, and therefore that portion of Claim XX should be **DISMISSED**.

23

24

25

Defendants do not specifically challenge plaintiff's allegation that defendant Allen attacked him, other than to state generally that the facts plaintiff asserts are not sufficiently specific to establish deliberate indifference on the part of defendants. However, plaintiff has alleged defendant Allen physically attacked him, choking him until he was unconscious. Dkt. 86, 18. These factual allegations are sufficiently specific to survive at this stage of the proceedings, and therefore that portion of Claim XX should **NOT BE DISMISSED**.

## II.     <u>RECOMMENDATION</u>

### A.  <u>Claims for Damages</u>

Based on the foregoing discussion, the undersigned recommends the Court **GRANT** defendants' motion to dismiss (Dkt. 104) plaintiff's Amended Complaint (Dkt. 86) to the extent that the following claims are **DISMISSED**:

- **Claim I**: all allegations based on violations of PREA, as well as those relating to the use of or policy ban on video and/or surveillance cameras.

- **Claim II**: duplicative of Claim I, therefore combined with Claim I, and dismissed as a separate cause of action.

- **Claim III**: all allegations.

- **Claim IV**: all allegations.

- **Claim V**: all allegations.

- **Claim VII**: all allegations.

- **Claim X**: all allegations.

- **Claim XV**: all allegations.

- **Claim XVII**: all allegations.

- **Claim XVIII**: plaintiff's allegation regarding being attacked as a result of Pierce County Jail's policy of not allowing the use of surveillance cameras in jail hallways or units.

- **Claim XIX**: duplicative -- combine with **VIII, IX, XI, and XIV – dismiss as a separate cause of action**.

- **Claim XX**: plaintiff's allegations regarding defendants Pastor, Spencer, Duroy, and Allen creating a no surveillance cameras that encouraged jail staff to attack pretrial detainees.

The undersigned further recommends the Court **DENY** defendants' motion to dismiss

(Dkt. 104) to the extent that the following claims are **NOT DISMISSED**:

- **Claim I**: plaintiff's allegations regarding the attack and sexual assault by defendants White, Lee, and Shanahan.

- **Claim VI**: all allegations.

- **Claim VIII**: all allegations.

- **Claim IX**: all allegations.

- **Claim XI**: all allegations.

- **Claim XII**: all allegations.

- **Claim XIII**: all allegations.

- **Claim XIV**: all allegations.

- **Claim XVI**: all allegations.

- **Claim VXIII**: plaintiff's allegation regarding defendants Sergeant Duroy and B. Moore physically attacking him.

- **Claim XX**: plaintiff's allegation regarding defendant Allen physically attacking him.

**B.  Claims for Injunctive Relief**

In addition to his request for damages, plaintiff seeks the following forms of injunctive

relief:

- require Pierce County Jail to assign a female staff member to supervise male and female inmates in administrative segregation;

REPORT AND RECOMMENDATION - 29

- require Pierce County Jail to install surveillance cameras, with the ability to record, in all jail units, hallways, and blind spots;

- require Pierce County Jail staff to use handheld video camcorders when approaching any pretrial detainee's cell for extraction;

- require Pierce County Jail to install new security doors that have food slots in all administrative segregation units and to keep jail staff from opening inmates' cell doors to feed the jail inmates;

- require Pierce County Jail to install shower curtains in all jail units for pretrial detainees;

- require handheld video camcorders be used at all times when escorting high risk pretrial detainees to or from court or administrative segregation;

- require that plaintiff be housed at a jail other than Pierce County Jail or at a Department of Corrections facility;

- require Pierce County Jail to stop transporting plaintiff to and from court in a restraint chair;

- require Pierce County Jail to stop making pretrial detainees come out in handcuffs, belly chains, and shackles while in administrative segregation and during recreation time;

- require Pierce County Jail to stop denying *pro se* pretrial detainees on security alert modifications access to legal resources and other personal items;

- require Pierce County Jail to create an adequate law library;

- require Pierce County Jail to release all seriously mentally ill inmates from administrative segregation and no longer be housed in long-term isolation in solitary confinement;

- require Pierce County Jail to stop denying outside recreation to pretrial detainees housed in administrative segregation;

- require defendants to stop destroying and plaintiff from sending and receiving his mail;

- require Pierce County Jail to establish a system for logging all incoming and outgoing inmate mail;

REPORT AND RECOMMENDATION - 30

- require defendants to stop denying pretrial detainees in administrative
  segregation from possessing and ordering from outside vendors, books,
  newspapers, magazines, catalogues, and brochures;

- require Pierce County Jail to establish a disciplinary board, tohave a
  disciplinary hearings officer, and to give all inmates notice and a copy of
  any alleged rule violations or incident reports, as well as a right to a
  hearing;

- require Pierce County Jail to read all pretrial detainees their rights when
  being placed in administrative segregation;

- require defendants to stop housing plaintiff in administrative segregation
  out of retaliation if he ever returns to Pierce County Jail

Dkt. 86, pp. 19-22.

A state official who is sued in his or her official capacity for injunctive relief is "a person" under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989); *Ulaleo v. Paty*, 902 F.2d 1395, 1398 (9th cir. 1990) (if prospective injunctive relief is sought against a state official, it is allowable). A plaintiff seeking such relief need not allege personal involvement in the acts or omissions that constitute the alleged constitutional violation, as long as the law or policy being challenged and the official who can appropriately respond to the sought after injunctive relief is identified. *Hartmann v. California Dept. of Corr. and Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

An inmate's release from prison while his or her claims are pending, however, "generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th cir. 1995). A claim is moot "if it has lost its character as a present, live controversy and if no effective relief can be granted," such as where the issue "sought to be adjudicated has been mooted by developments subsequent to filing of the complaint." *Flowers v. Ahern*, 650 F.Supp.2d 988, 991 (N.D. Cal. 2009) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). For requests for injunctive relief, mootness is

REPORT AND RECOMMENDATION - 31

1  determined "in light of the present circumstances." *Id.* (citing *Mitchell v. Dupnik*, 75 F.3d 517,

2  528 (9th Cir. 1996)).

3  When an inmate has been transferred to another institution and "there is no reasonable

4  expectation nor demonstrated probability" that he or she will again be subjected to the conditions

5  from which he or she seeks injunctive relief, "the claim for injunctive relief should be dismissed

6  as moot." *Flowers*, 650 F.Supp.2d at 991 (citing *Dilley*, 64 F.3d at 1368-69). A claim that an

7  inmate *might* be transferred back to the same facility where the alleged injury occurred is "too

8  speculative to overcome mootness." *Id.*; *Murillo v. Holland*, 2016 WL 4764784, at *3 (E.D. Cal.

9  Sept. 12, 2016).

10  Here, plaintiff's section 1983 lawsuit has not been certified as a class action. Plaintiff,

11  furthermore, is no longer at Pierce County Jail, and based on the record, it appears he has not

12  been an inmate or pretrial detainee there since at least mid-June 2017. *See* Dkts. 55, 57. Nor has

13  plaintiff alleged any facts showing he has a reasonable expectation of being transferred back to

14  Pierce County Jail.

15  Plaintiff's Amended Complaint indicates he was incarcerated at Pierce County Jail as

16  early as February 16, 2016. Dkt. 86, p. 11. At some point after that, plaintiff appears to have

17  been transferred to the Monroe Corrections Center ("MCC") (he states he was transferred from

18  MCC to the Pierce County Jail on December 26, 2016). *Id.* at pp. 9, 10. On May 19, 2017,

19  plaintiff was transferred to Western State Hospital ("WSH"). Dkt. 72, p. 10. By June 11, 2017,

20  plaintiff had been transferred from WSH directly to the MCC (Dkts. 55, 57), and by September

21  25, 2017, he had been transferred to the Washington State Penitentiary. Dkt. 70. As of August 8,

22  2018, plaintiff had been transferred to the Washington Corrections Center. Dkt. 122.

23  At no time since May 19, 2017, has plaintiff been transferred back to Pierce County Jail.

24

25  REPORT AND RECOMMENDATION - 32

1   Nor is there any evidence to support such a transfer will or is likely to occur. *Reed v. Barcklay*,

2   2014 WL 7178363, at *2 (D. Ariz. Dec. 17, 2014) ("A claim that the inmate might be transferred

3   back to the prison where the injury occurred, without evidence to support such a transfer, is too

4   speculative to overcome mootness.").

5          Because plaintiff was incarcerated at the Pierce County Jail as a pretrial detainee, and he

6   has been back in prison for more than a year apparently will be there for a significant period of

7   time (*see* Dkt. 86, p. 13 [stating that custodial assault charges against him were dismissed on

8   June 20, 2016, because he was given 10 years on "his other cases"]), the Court should not

9   speculate whether he will at some point in the future be incarcerated again at the Pierce County

10  Jail.

11         For purposes of determining whether an exception to the mootness doctrine applies, the

12  Court "cannot assume that criminal conduct will be recurring" on plaintiff's part. *Alvarez v. Hill*,

13  667 F.3d 1061, 1065 (9th Cir. 2012). "[A]nticipating whether and when a party will be charged

14  with a crime is too speculative and conjectural." *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488,

15  495-95 (1974)). Plaintiffs are assumed, furthermore, to "conduct their activities within the law

16  and so avoid prosecution and conviction." *Id.*; *Reimers v. Oregon*, 863 F.2d 630, 632 and n.4

17  (9th Cir. 1988) (former inmate had no reasonable expectation of returning to prison, because

18  such would occur only if he committed an additional crime, and he was "able, and indeed is

19  required by law, to prevent this from occurring").

20         Nor does the fact that plaintiff may have been subject to past harm by the defendants as

21  alleged in the Amended Complaint suffice to overcome the mootness of his claims for injunctive

22  relief. *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251 (9th Cir. 1990) (noting that past harm is largely

23  irrelevant when analyzing a claim of standing for injunctive relief predicated on threats of future

24

25

1  harm, and that the same level of interest is also required to maintain a claim under the mootness

2  doctrine). Where standing for injunctive relief has been found to exist for a threat of future harm,

3  "it consistently has been determined that some systematic pattern, repetition or relationship

4  exists" that "would suggest [a] return to [the same facility where the alleged injury occurred] is

5  inevitable." *Id.* That inevitability has not been shown to exist here.

6        Accordingly, plaintiff's claims for injunctive relief should **BE DISMISSED**.

7  

**III.**    <u>**CONCLUSION**</u>

8        Based on the foregoing discussion, the undersigned recommends that the Court DISMISS

9  in part and GRANT in part defendants' motion to dismiss plaintiff's Amended Complaint (Dkt.

10  104) in accordance with the findings set forth herein.

11        The parties have **fourteen (14) days** from service of this Report and Recommendation to

12  file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to

13  file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*,

14  474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for

15  consideration on **November 9, 2018**, as noted in the caption.

16        Dated this 23rd day of October, 2018.

17

18

19  *Theresa L. Fricke*

20  ————————————
Theresa L. Fricke
United States Magistrate Judge

21

22

23

24

25