UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DENTON,

                    Plaintiff,

     v.

PAUL A PASTOR, et al,

                 Defendants.

Case No. C17-5075 BHS-TLF

REPORT AND
RECOMMENDATION

Noted for September 6, 2019

This matter is before the Court on defendants' motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 104. This matter has been referred to the undersigned Magistrate Judge for reconsideration of the issue of res judicata. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4); Dkt. 128; Dkt. 130. For the reasons set forth below, the undersigned recommends the Court GRANT in part and DENY in part defendants' motion to dismiss plaintiff's amended complaint in accordance the Report and Recommendation filed on October 23, 2018 (Dkt. 126) as modified herein.

## **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, who is currently an inmate at the Washington Correction Center, was at all times relevant to this lawsuit a pretrial detainee at Pierce County Jail.

## I.    <u>Prior Proceeding: Denton v. Pastor et. al, No. 3:16-cv-05314-RJB ("*Denton I*")</u>

On April 28, 2016 plaintiff filed a complaint in the Western District of Washington under 42 U.S.C. § 1983.  *Denton v. Pastor et. al*, No. 3:16-cv-05314-RJB Dkt. 1.[1]  On July 21, 2016 plaintiff filed an amended complaint naming as defendants: "Sherriff Pastor, Chief Patti Jackson, L.T. Charles James Hutchinson, Sergeant Caruso, L.T.S. Jones, Captain Marvin Spencer, Officer Andy Powell, Officer R. Vancleave, L.T.B. Davis and Sergeant Kathi Miller."  *Id*. Dkt. 25 at 1.[2]  Plaintiff's amended complaint alleged that: (1) Defendants James-Hutchinson and Caruso denied plaintiff's due process rights when they revoked his good time credits; (2) Defendants James-Hutchinson, Caruso, Pastor, Spencer and Jackson failed to protect plaintiff by failing to place surveillance cameras in the jail; and (3) Defendants Pastor and Spencer violated the First Amendment by prohibiting pretrial detainees in administrative segregation from receiving magazines, books and newspapers.  *Id*. Dkt. 25 at 3, 5-6.

On August 4, 2016 defendants filed a motion to dismiss the amended complaint for failure to state a claim.  *Id*. Dkt. 26.  The Court granted defendants' motion in part and denied the motion in part.  *Id*. Dkt. 41, 44.  The Court dismissed plaintiff's failure to protect claim and denied the motion as to the due process claims alleged against defendants James-Hutchinson and Caruso, and the First Amendment claim against defendant's Pastor and Spencer.  *Id*.  The Court also dismissed defendants Jackson, Jones, Davis, Miller, Powell, and Vancleave because plaintiff's amended complaint failed to allege facts showing how these defendants caused or

---

[1] The Court may consider a document under ER 201 by judicial notice if it contains a fact that is not subject to reasonable dispute, generally known, or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (B)(1)-(2).  The Court may also take judicial notice of its own file and records from a different case where the same parties are involved.  *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969).

[2] When referring to a page number in a document the undersigned is using the electronic number designation located at the top of the document, rather than the page number on the document.

1    personally participated in causing the harm alleged in the complaint.  *Denton v. Pastor et. al*, No.

2    3:16-cv-05314-RJB,  Dkt. 41 at 10, Dkt. 44.

3    On May 1, 2017 plaintiff filed a second amended complaint naming defendants Pastor,

4    Spencer, James-Hutchinson, and Caruso as defendants.  *Id*. Dkt. 99 at 1.  The second amended

5    complaint alleges that: (1) Defendants James-Hutchinson, Caruso, Spencer and Pastor violated

6    plaintiff's rights by failing to provide procedural safeguards and a hearing before placing

7    plaintiff in administrative segregation; (2) Defendants James-Hutchinson and Caruso denied

8    plaintiff's due process rights when they revoked his good time credits; and (3) Defendants Pastor

9    and Spencer violated the First Amendment by prohibiting detainees in administrative segregation

10   from receiving magazines, books and newspapers.[3]  On September 19, 2018 plaintiff filed a

11   motion for summary judgment and on September 27, 2018 defendants filed their own motion for

12   summary judgment.  *Id*. Dkt. 133, 139.  The Court denied plaintiff's motion for summary

13   judgment.  *Id*. Dkt. 155, 166.  The Court granted defendants' motion for summary judgment as to

14   plaintiff's Frist Amendment claim and due process claim related to plaintiff's security

15   classification, but denied defendants' motion for summary judgment as to plaintiff's due process

16   claims relating to the revocation of good time credits.  *Id*.  On October 19, 2018, the Court

17   dismissed plaintiff's remaining claims as a sanction for "non-participation, non-compliance and

18   multiplying and obstructing proceedings."  *Id*. Dkt. 248.

19   **II.    <u>Current Action</u>**

20   Plaintiff filed the present action on February 1, 2017, during the pendency of *Denton I*,

21   and both actions have been litigated concurrently.

22

23   ───────────────────────

   [3] Sequentially this is the third claim in plaintiff's second amended complaint, but it is identified as Claim Four in the
24   second amended complaint.

25

In his original complaint brought in this action under 42 U.S.C. § 1983, plaintiff asserted 11 different claims alleging violations of his federal constitutional rights and rights under the Prison Rape Elimination Act ("PREA") against more than a dozen named defendants. Dkt. 11. Those defendants moved to dismiss that complaint arguing: (1) plaintiff failed to exhaust administrative remedies; (2) plaintiff failed to allege personal participation by defendants; (3) PREA did not create a private right of action; and (4) all claims related to receipt of mail should be dismissed because that issue remained pending before the Court in a separate civil action. Dkt. 29.

The Court granted the defendants' motion as to plaintiff's claims predicated on violations of PREA and denied defendants' motion as to the remaining claims. Dkt. 65, 79. The Court subsequently allowed plaintiff to file an amended complaint, in which he named additional defendants, asserting 20 claims alleging violations of his federal constitutional rights and rights under PREA. Dkt. 85, 86. Defendants moved to dismiss plaintiff's amended complaint. Dkt. 104. On October 19, 2019, while defendants' motion to dismiss plaintiff's amended complaint was pending, but after the briefing period, the Court in *Denton I* entered an order of judgment dismissing all of plaintiff's pending claims in *Denton I*. *See, Denton v. Pastor et. al*, No. 3:16-cv-05314-RJB, Dkt. 248.

On October 23, 2018 the undersigned issued a Report and Recommendation recommending the Court deny defendants' motion in part and grant defendants' motion in part. Dkt. 126. Plaintiff and defendants each filed an objection to the Report and Recommendation. Dkt. 128, 129. In their objection defendants argued that in light of the dismissal with prejudice in *Denton I,* the Court should dismiss Claims VI, VIII, IX, XI, XIII, XIV, and XVIII as they relate to defendants Pastor, Jackson, Spencer, James-Hutchinson, Jones, and Caruso pursuant to

the doctrine of res judicata.  Dkt. 128.  The Court found that defendants' objections regarding res

judicata had merit and referred the matter to the undersigned to consider the merits of a fully

briefed motion on the issue of res judicata.  Dkt. 130.  The parties have submitted supplemental

briefing regarding the issue of res judicata in this action.  Dkt. 135-137.

## DISCUSSION

This Report and Recommendation  addresses res judicata;  other grounds (asserted by

defendants' motion to dismiss (Dkt. 104)) are not within the scope of the referral.  Dkt. 130.

Accordingly, this Report and Recommendation differs from the previous Report and

Recommendation (Dkt. 126) only with regard to the issue of res judicata raised in defendants'

objection. Dkt. 128.

Having fully considered the parties supplemental briefing, the record in the current

action and the record in *Denton I*, the undersigned recommends the Court:

- SHOULD NOT DISMISS Claim VI;

- SHOULD DISMISS Claim VIII as to Defendants Pastor and James-Hutchinson;

- SHOULD NOT DISMISS Claim VIII as to Defendants Jackson and Jones;

- SHOULD NOT DISMISS Claim IX;

- SHOULD DISMISS Claim XI as to Defendants Pastor and James-Hutchinson;

- SHOULD NOT DISMISS Claim XIII;

- SHOULD NOT DISMISS Claim XIV; and

- SHOULD NOT DISMISS Claim XVIII.

I.    **Res Judicata Standard**

The doctrine of res judicata, also known as claim preclusion, bars parties and their privities in successive litigation from pursuing claims that were or could have been raised in a prior action.  *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019); *Hells Canyon Pres. Council v. United States Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005). Res judicata "serves to protect adversaries from the expense and vexation of attending multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Americana Fabrics, Inc. v. L&L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985).  When the same claim is litigated in two courts simultaneously the first court to reach judgment has preclusive effect and the second court should give res judicata effect to the judgment of the first.  *Id*. at 1530.

The party asserting that a claim is barred by res judicata carries the burden of establishing all necessary elements.  *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 8484, 855 (9th Cir. 2016). The necessary elements to establish a res judicata defense are: (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.  *Id*.

A. **Identity of Claims**

The courts apply four criteria to determine whether there is an identity of claims:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017). These criteria cannot be applied mechanically, the courts have long recognized the flexibility inherent in determining whether there is an identity of claims.  *United States v. Liquidators of Eur. Fed. Credit Bank*, 630

F.3d 1139, 1150 (9th Cir. 2011); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th

Cir. 1982); *Abramson v. Univ. of Haw.*, 594 F.2d 202, 206 (9th Cir. 1979).

Although all four of the criteria are considered, the fourth factor, whether the two suits

arise out of the same transactional nucleus of facts, is the most important. *Harris v. Cty. Of*

*Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). In fact, the fourth criterion is outcome

determinative. *Garity*, 828 F.3d at 855.

The courts use a transactional test to determine whether the two suits share a common

nucleus of operative facts. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir.

2005). Whether two events are part of the same transaction or series depends on whether the

claims are related to the same sets of facts and could conveniently be tried together. *Id.* (*citing*

*to Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992). As the Ninth Circuit recently

explained:

> We are most concerned with the facts or events from which the alleged harms
> arose. "If the harms arose at the same time, then there was no reason why
> plaintiff could not have brought both claims in the first action. The plaintiff
> simply could have added a claim to the complaint." In contrast 'if the harms
> arose from different facts,' then a party is not obligated to bring both claims on
> pain of preclusion.

*Media Rights Techs., Inc.*, 922 F.3d at 1027 (*quoting Howard*, 871 F.3d at 1039; *Liquidators of*

*Eur. Fed. Credit Bank*, 630 F.3d at 1151) (all other internal quotations and citations omitted).

If the new claims are based on the same nucleus of operative facts as a previous action,

there is an identity of claims regardless of whether the claim was actually litigated. *Tahoe-Sierra*

*Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077-78 (9th Cir. 2003).

The relevant inquiry is whether the claim is based on the same nucleus of facts and could have

been raised in the previous action. *Id.* Further, res judicata can only apply to claims that existed

1   and could be the subject of a lawsuit at the time the operative complaint was filed in the first

2   action. *Media Rights Techs., Inc.* 922 F.3d at 1021. When a party has filed amended complaints,

3   the courts look to what claims existed and could be sued upon at the time the relevant amended

4   complaint was filed. *Howard*, 871 F.3d at 1040[4]; *Tahoe-Sierra Pres. Council,* 322 F.3d at 1078.[5]

### B.  Final Judgment on the Merits

6        For purposes of res judicata, an involuntary dismissal pursuant to FRCP 41(b) is

7   considered a final judgment on the merits, regardless of whether the dismissal was on procedural

8   or substantive grounds. *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 884 (9th

9   Cir. 1997). Similarly, if the court dismisses on summary judgment, the dismissal is considered a

10  final judgment on the merits for res judicata purposes. *Mpoyo*, 430 F.3d at 988. Additionally, "a

11  final judgment retains all of its res judicata consequences pending decision of the appeal."

12  *Tripati v. Henmann*, 857 F.2d 1366, 1367 (9th Cir. 1988).

### C.  Identity or Privity of Parties

14       The third element of res judicata is met when the parties in the two actions are identical

15  or there is privity between the parties. *Mpoyo*, 430 F.3d at 988. For the purposes of res judicata

16  privity is a legal conclusion "designating a person so identified in interest with a party to former

17  litigation that he represents precisely the same right in respect to the subject matter involved."

18  *Headwaters Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1052-53 (9th Cir. 2005);

19  *Schimmels*, 127 F.3d at 881. Because a person who is not a party to a suit generally has not had

---

[4] "Howard filed her initial complaint in Howard I on September 14, 2009, and she filed a second amended complaint on October 26, 2010. She had not yet applied for the Finance Director position at the time of her first or second amended complaints, let alone received the July 6, 2011 rejection letter. Thus, Howard's retaliation claims in this suit arose from events that occurred after she filed her complaint in Howard I, and they are not barred by claim preclusion."

[5] "These development moratoria and the criteria which govern any change in the moratoria were all established by the 1987 Plan and were unambiguously in force before the Association filed its first amended complaint in the former action. Any of the claims presently before us could thus have been asserted in the previous lawsuit."

a full and fair opportunity to litigate a claim, the relationships sufficiently close to justify a finding of privity are limited. *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008). The United States Supreme Court has identified six categories of relationships that can establish privity between parties for the purposes of res judicata:

> First, a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement. […]
>
> Second, nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationships" between the person to be bound and a party to the judgment. […] Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. […]
>
> Third, we have confirmed that, in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interest who was a party to the suit. […] Representative suits with preclusive effect on nonparties include properly conducted class actions, […] and suits brought by trustees, guardians, and other fiduciaries. […]
>
> Fourth, a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered. […] Because such a person has had the opportunity to present proofs and argument, he has already had his day in court even though he was not a formal party to the litigation. […]
>
> Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. […] And although our decisions have not addressed the issue directly, it also seems clear that preclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment. […]
>
> Sixth, in certain circumstances a special statutory scheme may expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process.

*Taylor*, 553 U.S. at 893-895 (internal citations and quotations omitted).

1    **II.    Plaintiff's Claims**

2        **A.  Claim VI**

3        Plaintiff alleges that defendants Pastor, Jackson, and Spencer violated his constitutional

4    rights by instructing their staff to issue only one electric razor to be shared among five jail units.

5    Dkt. 86 at 7.  Plaintiff further alleges that as a result he contracted "a virus and rash on his face

6    with bumps and puss."  *Id*.  Plaintiff does not identify when this allegedly occurred or for how

7    long it allegedly occurred.  Further, contrary to defendants' assertion in their reply brief (Dkt.

8    137 at 4), plaintiff alleges that the defendants "instructed" the staff to only use one razor, but at

9    no point alleges that it was an "ongoing policy."  Dkt. 86 at 7.

10        Claim VI does not identify when this alleged misconduct occurred.  At this stage of

11   litigation, it is not possible to determine whether the claim accrued before the operative

12   complaint in *Denton I,* whether it is based on the same facts as *Denton I* or whether it could have

13   been brought in the prior action.  Because without more it is unclear whether this claim is based

14   on the same facts and could have been raised in *Denton I*, defendants have not meet their burden

15   of establishing an identity of claims.

16        For the foregoing reasons, Claim VI is not precluded by the doctrine of res judicata and

17   should **NOT BE DISMISSED**.

18        **B.  Claim VIII**

19        Plaintiff alleges that defendants Pastor, Jackson, James-Hutchinson and Jones violated his

20   due process rights by placing him in administrative segregation without certain procedural

21   safeguards.  Dkt. 86 at 8.  Specifically, plaintiff alleges that defendants violated his due process

22   rights by: not having a disciplinary board, not having an assigned disciplinary hearing officer,

23   creating a ban on giving inmates copies of alleged incident reports and making "inmates" pay for

24

25

REPORT AND RECOMMENDATION - 10

a copy of the alleged incident reports or rule violations.  *Id*. at 8.  Plaintiff further alleges that

defendants failed to implement the following disciplinary safeguards: (1) providing plaintiff with

written notice of the disciplinary violation, (2) providing plaintiff the right to have a hearing for

all alleged rule violations, (3) allowing plaintiff the right to call witnesses at the hearing, (4)

providing plaintiff a written statement of the reasons for being found guilty, (5) providing a fair

and impartial decision maker in the hearing, and (6) recording disciplinary hearings. *Id*. at 8-9.

Plaintiff alleges that because of defendants' failure to provide these procedural safeguards, he

was illegally placed in administrative segregation.  *Id*.  Additionally, plaintiff alleges that his

rights were violated because defendants placed him in solitary confinement despite knowing of

his mental health diagnoses.  *Id*.

Like Claim VI, plaintiff does not identify when these alleged violations occurred.  Instead

plaintiff alleges that he was illegally housed in administrative segregations for "10 months."  *Id*.

Plaintiff also alleges that "even when plaintiff returned back to the jail on December 26, 2016

from Monroe Correctional Complex plaintiff was again illegally housed in 3 South A-Unit

supermax, administrative segregation." *Id*. at 10.  In his briefing plaintiff alleges that he was

incarcerated in Pierce County from December 23, 2016 to June 6, 2017 and then a second time

from September 14, 2015 to June 20, 2016.  Dkt. 136 at 2.  For the purposes of briefing on the

issue of res judicata, defendants do not dispute these dates, instead arguing that even if these

dates are taken as true, res judicata would apply.  *See*, Dkt 137.

### a.  Defendants Pastor and James-Hutchinson

In *Denton I* defendants Pastor and James-Hutchinson were named as defendants in

plaintiff's second amended complaint.  *Denton v. Pastor et. al*, No. 3:16-cv-05314-RJB, Dkt. 99.

Therefore, for defendants Pastor and James-Hutchinson the operative complaint is the second

1    amended complaint which was filed on May 1, 2017.  *Id.*  Claim I of plaintiff's second amended

2    complaint in *Denton I* alleges, in relevant part, that defendants Pastor and James-Hutchinson

3    violated plaintiff's due process rights by:

> (1) failing to provide [him] with the right to have a disciplinary hearing for any
> and all alleged rule violations; (2) failing to provide a written notice of the
> disciplinary rule violation; (3) failing to provide tape recording of any and all
> disciplinary proceedings; (4) failing to provide with [sic] the right to have witness
> or witness statements at the hearing; (5) failing to provide written statement [sic]
> copies of the reason for being found guilty of any alleged rule violation; (6)
> failing to provide the disciplinary procedural safeguards.

*Denton I* Dkt. 99 at 6.  Plaintiff also alleges in Claim I that as a result of defendants' failure to

provide these procedural safeguards and the failure to assign a hearing officer for disciplinary

hearings, plaintiff was unjustifiably held in administrative segregation in 3 South A-Unit.  *Id.*

Claim I in *Denton I* and Claim VIII of the present action both allege that defendants

Pastor and James-Hutchinson violated plaintiff's due process rights by failing to provide a

hearing officer and conducting disciplinary hearings without procedural safeguards. Dkt. 86 at 8-

9; *Denton I* Dkt. 99 at 6.  In fact, many of the procedural safeguards that plaintiff alleges

defendants failed to provide are identical in both claims.  Dkt. 86 at 8-9; *Denton I* Dkt. 99 at 6.

Additionally, in both claims plaintiff alleges that as a result defendants' conduct he was illegally

or unjustifiably held in administrative segregation in 3 South A-Unit.  Dkt. 86 at 8-9; *Denton I*

Dkt. 99 at 6.

Although plaintiff does not identify when the conduct alleged in Claim VIII of the

present action occurred, he  states that "[e]ven when plaintiff returned back to the jail in

December 26, 2016 from Monroe Correctional Complex plaintiff was again illegally housed in 3

South A-Unit supermax, administrative segregation without due process." Dkt. 86 at 9.  This

shows plaintiff  alleges that defendants' conduct occurred at least as early as December 26, 2016.

1    This is well before plaintiff filed the amended complaint in *Denton I* on May 1, 2017.  *Denton v.*

2    *Pastor et. al*, No. 3:16-cv-05314-RJB, Dkt. 99. Plaintiff's Claim VIII in the current amended

3    complaint (Dkt. 86) alleges infringement of the same rights as were asserted in Claim I in

4    *Denton I* (Dkt. 99)*, and are based on a continuation of the same facts alleged in *Denton I*.

5    Accordingly, Claim VIII is based on the same transactional nucleus of operative facts as *Denton*

6    *I* and plaintiff could have brought Claim VIII against defendants Pastor and James-Hutchinson in

7    *Denton I*.  Prosecution of Claim VIII in this action would merely relitigate claims already

8    decided on summary judgment in *Denton I*.  For these reasons, there is an identity of claims

9    between Claim VIII and Claim I in *Denton I*.

10    As to the second res judicata element,  Claim I of the second amended complaint in

11    *Denton I* was dismissed on summary judgment, there is a prior final judgment on the merits.

12    Finally, there is an identity of parties because defendants Pastor and James-Hutchinson were

13    both named in Claim VIII of the current action and in Claim I in *Denton I*.

14    For these reasons Claim VIII should be precluded pursuant to the doctrine of res judicata

15    and Claim VIII should be **DISMISSED** as to defendants Pastor and James-Hutchinson.

16    **b.  Defendant Jackson and Jones**

17    Defendants Jackson and Jones are named as defendants in Claim VIII of plaintiff's

18    amended complaint.  Dkt. 86 at 8.  Defendants Jackson and Jones were named as defendants in

19    plaintiff's first amended complaint in *Denton I* -- but claims against them were dismissed; leave

20    to amend as to those claims was not granted. Therefore, neither Jackson nor Jones were named in

21    the second amended complaint; ultimately the entire lawsuit was dismissed with prejudice.

22    *Denton v. Pastor et. al*, No. 3:16-cv-05314-RJB, Dkts. 25, 41 (pp. 5-7, 10-12), 44, 99, 249.

23    Defendants do not argue that Claim VIII of this action should be dismissed pursuant to res

24

25

1    judicata with respect to the claims against defendants Jackson and Jones.  See, Dkts. 128, 135,

2    137.

3        For this reason, Claim VIII should **NOT BE DISMISSED** as to Defendants Jackson and

4    Jones.

5        C.  **Claim IX**

6        Plaintiff alleges that defendants Pastor, Jackson, and Spencer violated plaintiff's

7    constitutionally protected rights by creating a policy ban that denied plaintiff and other pre-trial

8    detainees in administrative segregation outside recreation time.  Dkt. 86 at 9.  Plaintiff further

9    alleges that defendants denied him outside recreation time despite having knowledge of his

10   various mental health diagnoses.  *Id*.  Although plaintiff does not identify when this conduct

11   allegedly occurred, he does indicate that he was "deprived of the right to outside recreation for

12   10 months without fresh air or sunlight."  *Id*.

13       Defendants argue in their objection to the prior Report and Recommendation (Dkt. 128 at

14   7) and in their initial supplemental brief (Dkt. 135 at 11) that Claim IX should be dismissed

15   because it could have been raised in *Denton I*.  Defendants assert that Claim IX pertains to the

16   period between September 14, 2015 and June 21, 2016[6] and therefore "could have been raised in

17   the prior action." Dkt. 128 at 7; Dkt. 135 at 11.  Defendants contend that the fact that the claim

18   could allegedly have been raised in *Denton I* is sufficient to satisfy the first of the element of the

19   rest judicata analysis.  Dkt. 128 at 7; Dkt. 135 at 11.

20       In their reply brief, defendants elaborate on their argument suggesting that because the

21   period between September 14, 2015 to June 20, 2016 is the closest period to 10 months alleged

22

23   ──────────────
     [6] Notably, defendants do not explain how they arrived at this conclusion and provide no support for the position in
24   their objection or first supplemental brief.

25

by plaintiff, "one may infer that it was this period to which Claim IX pertains." Dkt. 137 at 5-6. Defendants argue in the alternative that regardless of what period of incarceration Claim IX is referring to, any ten-month period would necessarily begin before plaintiff's second amended complaint in *Denton I* was filed on May 1, 2017. *Id*. at 6. Defendants argue that regardless of the specific period of incarceration plaintiff is alleging, Claim IX "could have been raised in the prior action." *Id*.

Defendants argue that because Claim IX allegedly occurred before plaintiff filed the second amended complaint in *Denton I* plaintiff could have brought the claim in *Denton I* and therefore there is an identity of claims. However, as the Ninth Circuit has recently explained, regarding the first element of the res judicata analysis, the courts are "most concerned with the facts or events from which the alleged harms arose." *Media Rights Techs.,* 922 F.3d at 1027. In fact, if the harms alleged arose from different facts, the "party is not obligated to bring both claims on pain of preclusion." *Id*. As the party asserting that Claim IX is barred by res judicata, defendants have the burden of establishing that there is an identity of facts or events concerning claims between Claim IX and *Denton I. Garity,* 828 F.3d at 855. As previously discussed there are four criteria that defendant can use to establish an identity of claims:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Howard*, 871 F.3d at 1039.

However, defendants do not address these criteria or explain how Claim IX is based on the same facts or events as *Denton I.* Instead defendants only assert that plaintiff "could have brought this claim in *Denton I*." Further, at this stage of the litigation there is insufficient

1    information on the record to determine whether Claim IX arises from the same facts as *Denton I*.

2    Accordingly, defendants have not met their burden at this stage of establishing an identity of

3    claims between Claim IX and *Denton I*.

4        For these reasons, Claim IX should **NOT BE DISMISSED**.

5    **D.  <u>Claim XI</u>**

6        Plaintiff alleges, in relevant part, that defendants Pastor and James-Hutchinson created a

7    policy that prohibited pretrial detainees held in administrative segregation from possessing

8    books, newspapers, magazines or catalogues.  Dkt. 86 at 10-11.  Plaintiff alleges that on

9    December 26, 2016 he was transferred from Monroe Correction Center back to the Pierce

10   County Jail.  Dkt. 86 at 10.  Plaintiff further alleges that on December 28, 2016 jail officials, in

11   accordance with defendants' policy, confiscated and destroyed several of plaintiff's books,

12   newspapers and magazines.  *Id*.

13       In Claim IV of plaintiff's second amended complaint in *Denton I,* plaintiff alleges that

14   defendants Pastor and Spencer violated plaintiff's constitutional rights by creating an absolute

15   ban on pretrial detainees possessing magazines, books, and newspapers while in administrative

16   segregation.  *Denton v. Pastor et. al*, No. 3:16-cv-05314-RJB, Dkt 99 at 7.  Plaintiff further

17   alleged that because of this policy, a number of plaintiff's magazines were confiscated and

18   destroyed.  *Denton I* Dkt. 99 at 7.

19       Claim XI in the present action and Claim IV in *Denton I* both challenge the Pierce

20   County Jail policy prohibiting pretrial detainees in administrative segregation from possessing

21   magazines, books or newspapers.  Both claims allege that as a result of these policies plaintiff's

22   reading materials were confiscated and destroyed.

23

24

25

1    Plaintiff argues that the claims in plaintiff's current amended complaint are not identical

2    to the claims in the second amended complaint in *Denton I* and that the claims cover different

3    periods of incarceration.  Dkt. 136 at 4.  Plaintiff further argues that the claims in the current

4    amended complaint arise from events that occurred after *Denton I* was filed and are therefore

5    based on a different transactional nucleus of facts.  *Id*.  With regards to Claim XI the undersigned

6    disagrees.

7    The policies challenged in both claims are identical and resulted in the same alleged

8    harm.  Claim XI does not allege a different factual basis, instead alleging that the same wrong

9    that allegedly occurred in IV continued through December of 2016.  Both claims allege that the

10   same right was violated by identical continuing policies.  Because the allegedly illegal policy

11   was in effect December 2016, plaintiff could have raised these claims in the second amended

12   complaint in *Denton I* by simply adding more factual allegations to Claim IV.  Further, although

13   Claim XI alleges that different magazines and books were confiscated, Claims XI and IV are so

14   similar that plaintiff could have brought both claims in a convenient trial unit alleging a cohesive

15   narrative of continuing violations.  Additionally, if plaintiff were allowed to prosecute this claim,

16   it would only serve as a re-litigation of a claim already considered and decided in *Denton I*.  For

17   these reasons, there is an identity of claims between Claim XI and Claim IV in *Denton I*.

18   With regards to the second res judicata element, Claim IV in *Denton I* was dismissed on

19   summary judgment, therefore Claim IV was decided by a final judgment on the merits.

20   Defendants Pastor and James-Hutchinson are named defendants in both this action and in *Denton

21   I* and plaintiff had a full and fair opportunity to bring Claim XI against both defendants in

22   *Denton I*.  Therefore, there is also an identity of parties between the two actions.

23

24

25

REPORT AND RECOMMENDATION - 17

1    For these reasons Claim XI should be precluded pursuant to the doctrine of res judicata

2    and should be **DISMISSED** as to defendants Pastor and James-Hutchinson.

3    **E.  Claim XIII**

4    Plaintiff alleges that defendants Pastor and Caruso violated plaintiff's constitutionally

5    protected rights by creating a security alert policy that deprived plaintiff access to the courts.

6    Dkt. 86 at 11.  Plaintiff alleges that because of the jail's policy prohibiting pretrial detainees from

7    possessing books, magazines and newspapers, plaintiff was prevented from ordering legal books

8    and materials that would assist him in representing himself in a criminal trial.  *Id*. at 11-12.

9    Plaintiff further alleges that despite knowing he was a pro se defendant representing himself in a

10    criminal trial, defendants "never" allowed plaintiff access the to his legal documents, legal books

11    or a legal computer.  *Id*.  In fact, plaintiff alleges that defendant Caruso testified on the record in

12    a court proceeding on March 26, 2016 that "she cannot and will not allow plaintiff any legal

13    materials, legal books, or access to the legal computer while he is housed at Pierce County Jail

14    due to the security-alert policy."  *Id*.

15    Defendants argue in their objection to the prior Report and Recommendation (Dkt. 128 at

16    7) and in their initial supplemental brief (Dkt. 135 at 11) that Claim XIII should be dismissed

17    because it could have been raised in *Denton I*.  Defendants assert that Claim XIII pertains to the

18    period between September 14, 2015 and June 21, 2016 and therefore "could have been raised in

19    the prior action." Dkt. 128 at 7; Dkt. 135 at 11.  Defendants contend that the fact that the claim

20    could allegedly have been raised in *Denton I* is sufficient to satisfy the first of the element of the

21    rest judicata analysis.  Dkt. 128 at 7; Dkt. 135 at 11.  In their reply brief, defendants assert that

22    because plaintiff alleges that defendant Caruso testified regarding this policy on March 26, 2016,

23

24

25

1    plaintiff knew about the policy before May 1, 2017 and could therefore have raised the claim in

2    the second amended complaint in *Denton I*.  Dkt. 137 at 7.

3           However, as was previously discussed, the most important consideration is not solely

4    whether the claim arose before the operative complaint, but is rather whether the claims arise

5    from the same facts as a previous action and could have been raised in the previous action.

6    *Media Rights Techs.*, 922 F.3d at 1027.  If the harms alleged in the later filed action arise from

7    different facts than the previous action, there is no preclusion because "a party is not obligated to

8    bring both claims on pain of preclusion."  *Id*.  As the party asserting that Claim XIII is barred by

9    res judicata, defendants have the burden of establishing that there is an identity of claims

10   between Claim XIII (current case, Dkt. 86 at 11) and *Denton v. Pastor et. al*, No. 3:16-cv-05314-

11   RJB, Dkt. 99 (Amended Complaint, *Denton I*).  *Garity,* 828 F.3d at 855.  As previously

12   discussed there are four criteria that defendants can use to establish an identity of claims:

13              (1) whether rights or interests established in the prior judgment would be
                destroyed or impaired by prosecution of the second action; (2) whether
14              substantially the same evidence is presented in the two actions; (3) whether
                the two suits involve infringement of the same rights; and (4) whether the two
15              suits arise out of the same transactional nucleus of facts.

16   *Howard*, 871 F.3d at 1039.

17          Defendants do not address these criteria or explain how Claim XIII is based on the same

18   facts or events as *Denton I*.  Instead defendants rely on their assertions that plaintiff allegedly

19   could have raised the claim in *Denton I*.  At this stage of the litigation it is unclear from the

20   record whether Claim XIII arises from the same set of facts and events as *Denton I*.

21   Accordingly, at this stage of litigation, defendants have not met their burden of establishing an

22   identity of claims between Claim XIII and *Denton I*.

23          For these reasons, Claim XIII should **NOT BE DISMISSED**.

24

25

1

**F.  Claim XIV**

2

Plaintiff alleges that defendants Pastor and Jackson violated plaintiff's constitutionally

3

protected rights by creating a security policy that deprived plaintiff of his right to have a full

4

hour of recreation.  Dkt. 86 at 12.  Specifically, plaintiff alleges that defendants' policy allowed

5

plaintiff only one hour out of his cell to shave, shower, clean his cell, call his family and

6

communicate with his attorney.  *Id*.  Plaintiff further alleges that during this hour out plaintiff

7

was required to wear handcuffs, belly chains and shackles.  *Id*.  Plaintiff does not identify when

8

this policy was allegedly implemented or when any of the allegedly wrongful acts occurred.  *See,*

9

*id*. at 12-13.

10

Defendants argue that plaintiff could have brought this claim in the *Denton I* because

11

plaintiff was allegedly aware of the policy and conduct alleged "as early as September 14, 2015."

12

Dkt. 137 at 7. See also, Dkt.  135 at 11; Dkt. 128 at 7.  However, defendants do not explain how

13

they have determined that plaintiff knew about the conduct alleged in Claim XIV as early as

14

September 14, 2015.  In fact, defendants acknowledge that "[p]laintiff does not state when this

15

occurred." Dkt. 137 at 7.  Because at this stage in the litigation it is unclear when the conduct

16

alleged in this claim occurred, if it was related to the facts alleged in *Denton I* or whether

17

plaintiff could have raised this claim in *Denton I*, defendants have not established an identity of

18

claims between this claim and *Denton I*.  Therefore, defendants have failed to meet their burden

19

of establishing all necessary res judicata elements. *Garity,* 828 F.3d at 855.

20

For these reasons, Claim XIV should **NOT BE DISMISSED**.

21

22

23

24

25

### G.  **Claim XVIII**

Defendants no longer move to dismiss this claim pursuant to the doctrine of res judicata. Dkt. 137 at 3 n.2.  Defendants state that reference to this claim in earlier briefing was in error and the claim should not be dismissed pursuant to res judicata.  *Id.*

As such Claim XVIII should **NOT BE DISMISSED**.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court GRANT in part and DENY in part defendants' motion to dismiss plaintiff's amended complaint (Dkt. 104) in accordance with the undersigned's previous Report and Recommendation (Dkt. 126,) as modified herein.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **September 6, 2019**, as noted in the caption.

Dated this 21st day of August, 2019.

Theresa L. Fricke
United States Magistrate Judge