UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DENTON,

                            Plaintiff,

          v.

PAUL A PASTOR, et al.,

                            Defendants.

Case No. C17-5075 BHS-TLF

REPORT AND
RECOMMENDATION

Noted for December 31, 2021

This matter comes before the Court on defendants' motion for summary judgment. Dkt. 173. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the Court should GRANT IN PART and DENY IN PART defendants' motion for summary judgment (Dkt. 173).

The Court should dismiss plaintiff's claims against defendants Rhoton, Caruso, James-Hutchinson and Brasswell-Bouyer; plaintiff's due process claims against Jackson and Jones; plaintiff's shaving razor policy claims; and plaintiff's access to court claims. Plaintiff's remaining claims should proceed in this litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this action for alleged violations of his constitutionally protected rights while incarcerated at Pierce County Jail from December 2016 to May 2017. Dkt. 170 at ¶¶ 10-29. At all times relevant to this litigation, plaintiff was a pretrial detainee. *Id.*

1    Based on the briefing and the record before the Court, the following facts are

2    undisputed.

3    From September 2015 to June 2016, plaintiff was housed at Pierce County

4    Corrections Center (the "Jail"). Dkt. 173, Motion for Summary Judgment, at 2; Dkt. 197,

5    Plaintiff's Opposition, at 3. On December 28, 2016, plaintiff returned to the Jail. Dkt.

6    176, James-Hutchinson Decl., Dkt. 176-2 Observation Report (12/28/2016); Dkt. 176-3

7    Primary Classification (12/29/2016); Dkt. 199, Denton Decl., at ¶4. Based on plaintiff's

8    prior behavioral records, he was placed in administrative segregation. *Id.* Plaintiff

9    remained in administrative segregation during the relevant period of this litigation. *Id.*

10    On December 30, 2016, plaintiff submitted a grievance which was informally

11    resolved. Dkt. 6, Department of Corrections Grievance (12/30/2016); Dkt. 199, Denton

12    Decl., at ¶¶ 5-6. On February 10, 2017 plaintiff submitted another grievance which was

13    denied. Dkt. 199, Denton Decl., at ¶ 4.

14    The parties' disputed facts, and whether these are genuine disputes of material

15    fact, will be discussed as relevant to the legal analysis below.

16                                    DISCUSSION

17    Summary judgment is supported if the materials in the record "show that there is

18    no genuine issue as to any material fact and that the movant is entitled to judgment as a

19    matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party

20    bears the initial burden to demonstrate the absence of a genuine dispute of material fact

21    for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute

22    concerning a material fact is presented when there is sufficient evidence for a

23    reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

24

25

REPORT AND RECOMMENDATION - 2

1    *Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is

2    "relevant to an element of a claim or defense and whose existence might affect the

3    outcome of the suit"; thus, materiality is "determined by the substantive law governing

4    the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

5    (9th Cir. 1987).

6         The non-moving party is required to show that genuine issues of material fact

7    "'can be resolved only by a finder of fact *because they may reasonably be resolved in*

8    *favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan*

9    *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at

10    250) (emphasis in original). When the Court considers a motion for summary judgment,

11    "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

12    be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the

13    jury's function – the Court may not weigh evidence, draw legitimate inferences from

14    facts, or decide credibility. *Id.* If the moving party meets their initial burden, an adverse

15    party may not rest upon the mere allegations or denials of his pleading; his or her

16    response, by affidavits or as otherwise provided in FRCP 56, must set forth specific

17    facts showing there is a genuine issue for trial. FRCP 56(c). The Court may not

18    disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck &*

19    *Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving

20    declaration that states only conclusions and not facts that would be admissible

21    evidence." *Id.*

22         To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

23    conduct complained of was committed by a person acting under color of state law, and

24

25

(b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

A. <u>Defendants' Objections</u>

In opposition to defendants' motion, plaintiff submitted his declaration (Dkt. 199) and the Declaration of Parker – plaintiff's attorney – (Dkt. 198). Included in the Declaration of Parker is a Clinical and Forensic Psychological Evaluation re: Diminished Capacity prepared by Dr. Anthony Eusanio ("Eusanio Report"). Dkt. 198-1, Eusanio Report at 17-53. Defendants object to the Eusanio Report and portions of plaintiff's declaration. Dkt. 201, Defendants' Reply. Defendants argue that the Eusanio Report contains hearsay and that plaintiff's attorney lacks the personal knowledge to testify to the matters outlined in the Eusanio Report. *Id.* Additionally, defendants contend that paragraph 18 of plaintiff's declaration is hearsay. *Id.* Accordingly, defendants' request that the Court strike these portions of the record. *Id.*

At the summary judgment stage, the Court is not focused on the admissibility of the evidence's form, rather the Court must focus on the admissibility of the evidence's content. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003), *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56."). Thus, even declarations that contain hearsay may be considered at summary

1    judgment if the content could be presented in admissible form at trial. *Fonseca v. Sysco*

2    *Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

3        Inadmissible hearsay is an out-of-court statement offered to prove the truth of the

4    matter asserted in the statement. Fed. R. Evid. 801(c). If a statement or document

5    contains multiple instances of hearsay, the statements or documents are admissible

6    only if each part of the combined statements conforms with an exception to the hearsay

7    rule. Fed. R. Evid. 805.

8        The Eusanio Report contains a number of examples of hearsay including

9    statements from Dr. Eusanio, plaintiff, plaintiff's brothers and plaintiff's friend. Dkt. 198-

10   1, Eusanio Report at 17-53. Paragraph 18 of plaintiff's declaration states: "In February

11   of 2017, I was examined for several hours by Dr. Eusanio to determine if I was fit to

12   stand trial on charges that I had thrown toilet water on a corrections officer. Dr. Eusanio

13   found that I suffer from PTSD, SHU syndrome, depression, and borderline personality

14   disorder." Dkt. 199, Declaration of Denton, at ¶ 18.

15       The Court should not strike plaintiff's statements in either document because

16   plaintiff can testify, based on personal knowledge, regarding his personal and medical

17   history as well as his symptoms. Fed. R. Evid. 602. Additionally, plaintiff can testify,

18   based on personal knowledge that he met with Dr. Eusanio, when he met with Dr.

19   Eusanio and for what purpose he met with Dr. Eusanio. *Id.* If plaintiff presented these

20   statements during trial, they would not be out of court statements and thus not hearsay.

21   Fed. R. Evid. 801. Additionally, the statements made to Dr. Eusanio would be

22   admissible under a hearsay exception because plaintiff presented these statements for

23   purpose of medical diagnosis. Fed. R. Evid. 803(4).

24

25

1    The Court should not strike Dr. Eusanio's statements and diagnosis. A medical

2    expert or one of plaintiff's doctors could testify to plaintiff's symptoms and diagnosis at

3    trial. Fed. R. Evid. 602. Additionally, defendant Rhoton testified that plaintiff was housed

4    in the Mental Health Unit. Dkt. 183, Declaration of Rhoton, at ¶ 5. Defendant Rhoton

5    explained that the focus of the Mental Health Program was to serve inmates "who were

6    at risk, as a result of a mental disorder, of presenting a danger to themselves or others,

7    or becoming gravely disabled." *Id.* at ¶ 3. It appears that the Jail was aware of plaintiff's

8    mental health conditions and history. Plaintiff's medical records and reports may be

9    admissible as records of regularly conducted activity. Fed. R. Evid. 803(6).

10    Finally, the Court should not strike the statements provided by plaintiff's brothers

11    and friend. Plaintiff's brothers and friend provided Dr. Eusanio information regarding

12    plaintiff's past and childhood, based on their memory of the events. Accordingly, these

13    individuals could testify at trial to this information based on their own personal

14    knowledge. Fed. R. Evid. 602. Accordingly, the fact that these statements are hearsay

15    can be corrected at trial via direct testimony subject to cross-examination.

16    Based on the foregoing, because the content of plaintiff's declaration and Dr.

17    Eusanio's report could be presented in admissible form at trial, the Court should deny

18    defendants' objection and motion to strike these documents.

19    B. Administrative Remedies

20    Defendants argue this litigation should be dismissed as a matter of law for failure

21    to exhaust available administrative remedies before filing this action. Dkt. 173 at 7-8.

22    The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative

23    remedies prior to filing a complaint in federal court. The PLRA states:

24

25

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"All 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Porter v. Nusle*, 534 U.S. 516, 524 (2002). The mere fact a plaintiff filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate litigation. *Booth v. Churner*, 532 U.S. 731, 736-41 (2001). The Court, must dismiss a prisoner's complaint "'when there is no *presuit* exhaustion,' even if there is exhaustion while suit is pending." *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (quoting *Mckinney v. Carey,* 311 F.3d 1198, 1200 (9th Cir. 2002)) (emphasis added by the court of appeals).

Failure to exhaust administrative remedies is properly brought as a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was an available administrative remedy and the offender failed to exhaust the available remedy, the burden shifts to the plaintiff. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). The plaintiff must show there was something about his claims which made the "existing and generally available administrative remedies effectively unavailable to him." *Id.* A plaintiff may demonstrate that the remedies were effectively unavailable by showing that the remedies were "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.*

1
2
3
4

A remedy is unavailable when a reasonable inmate could not be expected to know, use or understand the process required to achieve the remedy. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). Similarly, if a remedy is futile because officials are unable or unwilling to provide relief to an aggrieved inmate, the remedy is unavailable. *Id.*

5
6
7
8
9
10

On December 30, 2016, plaintiff submitted a grievance which was informally resolved. Dkt. 6, Department of Corrections Grievance (12/30/2016); Dkt. 199, Denton Decl., at ¶¶ 5-6. The grievance states that it was resolved by being forwarded to the PREA Unit and informed plaintiff that the grievance would not be investigated through the Offender Grievance Program. *Id.* It is unclear what occurred to plaintiff's grievance after being forwarded to the PREA Unit.

11
12
13
14
15
16

On February 10, 2017 plaintiff filed another grievance. Dkt. 174, Declaration of Frank Cornelius, at 66-67. The grievance form states that plaintiff's initial grievance was rejected because plaintiff did not attach a kite to the grievance. *Id.* Plaintiff appealed the denial of his grievance alleging that the jail was preventing inmates from properly filing grievances and that he did attach his kite to the grievance, but the grievance was still denied. *Id.* The grievance form does not include a response to plaintiff's appeal.

17
18
19
20
21
22

Defendants submitted the Declaration of Dione Alexander in support of the pending motion. Dkt. 178, Declaration of Alexander. Sergeant Alexander states that all inmates are provided an Inmate Information Booklet that contains information regarding the grievance process. Dkt. 178 at 2, 11-13. Defendants also submitted the Pierce County Sheriff's Department Grievance Procedure containing information about grievance procedures. Dkt. 176, Declaration of James-Hutchinson, at 31-36.

23
24
25

1    Plaintiff's declaration states that while at the Jail he was placed into

2  administrative segregation starting December 28, 2016 and stayed there in pre-trial

3  detention for six months; at no time was he provided with a copy of or access to the

4  Inmate Information Booklet, and he was never told about the classification appeals

5  process. Dkt. 199, Declaration of Denton, at 3-4, ¶ 4. Instead, plaintiff states that he

6  attempted to file grievances based on his knowledge of the Washington Department of

7  Corrections grievance process. *Id.* Plaintiff also states that his February 10, 2017

8  grievance was rejected despite attaching a kite and his appeal was ignored. *Id.* at ¶ 6.

9    Defendants argue that it is disingenuous for Mr. Denton to argue that he did not

10  know the Jail grievance process, because in a previous litigation he had attached a

11  grievance plaintiff filed in 2015 while at the Jail. Dkt. 201 at 1-2 (*citing Denton v. Pastor*,

12  No. 3:16-cv-5314-RJB-DWC.). The grievance in that action was rejected because

13  plaintiff did not attach a kite. *Denton v. Pastor*, No. 3:16-cv-5314-RJB-DWC, Dkt. 1-1 at

14  9-10. Additionally, plaintiff attached a portion of the Inmate Information Booklet to his

15  complaint in the previous action. *Id.* at 11.

16    Genuine disputes of material fact preclude summary judgment on the issue of

17  whether plaintiff adequately exhausted all available remedies. The parties provided

18  conflicting testimony regarding whether plaintiff received information about the

19  grievance process. The Court cannot weigh evidence and decide the credibility of the

20  contradicting testimony.

21    Additionally, the fact that plaintiff had access to the grievance procedures during

22  one period of detention at the Jail does not necessarily mean that at a different point in

23  time the process was identical, or that he had the same access during each of his

24

25

periods of detention. A reasonable jury could determine that he was not provided

access to the grievance policy during the relevant period. Finally, plaintiff contends that

his grievances were denied despite his attaching a kite to each grievance and the

defendants would not provide an explanation for the denial. Therefore, a reasonable

jury could find that the grievance system in place was futile.

The Court should deny defendants' motion for summary judgment on the issue of

exhaustion of administrative remedies.

C. Defendants Rhoton, Caruso, James-Hutchinson and Brasswell-Bouyer

Under Section 1983, an inmate must show that each defendant was involved in

violating the Constitution; liability of an official will only be found if there is individual

culpable action or inaction. *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019).

Plaintiff fails to allege facts indicating that defendants Rhoton, Caruso, James-

Hutchinson or Brasswell-Bouyer personally participated in any of the alleged violations.

Plaintiff's only allegation against defendant Rhoton, and James-Hutchinson, is that

plaintiff's attorney notified them that plaintiff was suffering from continuous housing in

solitary confinement. Dkt. 170 at ¶ 22. With regards to defendants Caruso, and

Brasswell-Bouyer, the only allegation raised is that they were employees of the Jail. Dkt.

170 at ¶ 8. The complaint fails to allege facts indicating specific acts or omissions of

these defendants, or facts showing a causal link between their acts or omissions and a

constitutional violation. Therefore, this Court should dismiss each claim against these

defendants without prejudice.

1    D. Cruel and Unusual Punishment – Excessive Force

2    Plaintiff alleges that defendants Moore, Genga, Allen, Moreno, Dussy, Duray,

3    White, Vadala, Whitehead, Wales, Cruz, Jackson, Lee and Shanahan violated plaintiff's

4    rights by using excessive force against plaintiff amounting to cruel and unusual

5    punishment. Dkt. 170 at ¶¶ 30-34. Defendants argue the Court should dismiss this claim

6    because the force used was reasonable and applied in good faith, and because the

7    defendants are entitled to qualified immunity on this issue. Dkt. 173 at 8-11

8    Unless plaintiff makes a two-part showing, qualified immunity shields government

9    officials from liability. The plaintiff must show both: the official(s) violated a federal

10   statutory or constitutional right, and – at the time of the alleged act or failure to act there

11   was clearly established law that defined the contours of the federal right objectively

12   putting the official(s) on notice – i.e., every reasonable official would understand that

13   what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019);

14   *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018).

15   When qualified immunity is reviewed in the context of a defense motion for

16   summary judgment, the evidence must be considered in the light most favorable to the

17   plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

18   curiam). If there is a genuine issue of material fact concerning both -- (1) whether it

19   would be clear to a reasonable officer their conduct was unlawful under the

20   circumstances, and (2) whether the defendant's conduct violated a constitutional right --

21   then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City*

22   *of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

23

24

25

1    To determine whether there was clearly established law, the Court has stated,

2  "[w]hile there does not have to be a case directly on point, existing precedent must

3  place the lawfulness of the particular [action] beyond debate"; and the Court has also

4  observed, "there can be the rare obvious case, where the unlawfulness of the officer's

5  conduct is sufficiently clear even though existing precedent does not address similar

6  circumstances." *Wesby,* at 590. A clearly established right exists if "controlling authority

7  or a robust consensus of cases of persuasive authority" have held, on facts that are

8  close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914

9  F.3d 1218, 1229 (9th Cir. 2019).

10    In some contexts, general constitutional rules identified in previous court

11  decisions may apply with such obvious clarity to the specific conduct of a defendant,

12  that qualified immunity will not apply even though existing case law did not hold the

13  specific action in question unlawful. *United States v. Lanier,* 520 U.S. 259, 271 (1997);

14  *Bonivert,* 883 F.3d at 872-73. If qualified immunity operated as a shield for all conduct

15  not specifically addressed in existing case law at the time of the event in question,

16  officials would never be held accountable for unprecedented constitutional violations

17  that would appear obvious. *Hope v. Pelzer,* 536 U.S. 730, 740-42 (2002).

18    "Eighth Amendment protections apply only once a prisoner has been convicted of

19  a crime, while pretrial detainees are entitled to the potentially more expansive

20  protections of the Due Process Clause of the Fourteenth Amendment." *Mendiola-*

21  *Martinez v. Arpaio*, 836 F.3d 1239, 1246 n. 5 (9th Cir. 2016) (*citing Kingsley v.*

22  *Hendrickson*, 135 S. Ct. 2466, 2475 (2015)). Even though conditions of confinement

23  claims brought by pretrial detainees arise under the Due Process Clause, the

24

25

guarantees of the Eighth Amendment "provide a minimum standard of care for determining rights as a pretrial detainee." *Gordon v. Cty. Of Orange,* 888 F.3d 1118, 1122 (9th Cir. 2018).

To establish a cause of action for excessive force, a pretrial detainee must demonstrate that the "force purposefully or knowingly used against him was objectively unreasonable" in light of the facts known to the defendants at the time and the legitimate security interests of the jail. *Kingsley,* 576 U.S. at 397. The reasonableness standard is an objective standard turning on the facts and circumstances of each particular case, without regard to the officers underlying intent or motivation. *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)). The Court must determine reasonableness "from the perspective of a reasonable officer at the scene, without the benefit of hindsight and accounting for the state's legitimate interest in managing the facility where the plaintiff is detained." *McFarlin v. Penzone,* 848 Fed. Appx. 695, 697-98 (9th Cir. 2021) (citing *Kingsley,* 576 U.S. at 396-97).

Plaintiff's excessive force claims arise from five incidents that occurred while plaintiff was incarcerated at the Jail from December 2016 to May 2017.

1. <u>December 29, 2016</u>

Plaintiff contends that on December 29, 2016 defendants White, Lee, and Shanahan entered plaintiff's cell. Dkt. 199, Declaration of Denton, at ¶ 14. Plaintiff states that defendant Shanahan stripped plaintiff of his clothing and defendant White used his taser gun on plaintiff. *Id.* Plaintiff also maintains that the defendants punched and kicked him before placing him in a restraint chair for eight hours. *Id.* at ¶¶ 14, 15.

1    Defendants contend that on December 29, 2016 Defendants Shanahan, Lee,

2    and White, along with Deputies Wilson and Frizzell transported plaintiff, in a restraint

3    chair to and from a court hearing. Dkt. 189 at 4, Pierce County Detention and

4    Corrections Center Observation Report (12/29/2016). Defendants contend that plaintiff

5    threatened to sue the correctional staff and that he would "catch a million assaults". *Id*.

6    Next, defendants report that after the cell door was closed and the restraints removed,

7    plaintiff began banging his head on the inner cell door, removed his jumpsuit and began

8    tying the jumpsuit to the door. *Id*. Defendants state that, fearing plaintiff was attempting

9    self-harm, the correctional staff cuffed plaintiff through the food port, placed him in a

10    suicide smock, placed him in a restraint chair and escorted plaintiff to the clinic. *Id*.

11    Defendant Shanahan states that she did not enter plaintiff's cell, did not remove his

12    clothes and did not use a taser on him. Dkt. 190, Declaration of Shanahan, at ¶ 3.

13        2.  <u>February 16, 2017</u>

14    Plaintiff contends that on February 16, 2017, defendants Genga, Whitehead,

15    Wales, Scott, Cruz, Jackson, Dussy and Vadala entered plaintiff's cell to remove his

16    legal documents at the direction of defendant Spencer. Dkt. 199, Declaration of Denton,

17    at ¶ 16. Plaintiff alleges that the defendants shot plaintiff with a taser gun, spat on

18    plaintiff, punched plaintiff, and slammed plaintiff's face against a toilet until plaintiff lost

19    consciousness. *Id*.

20    Defendants contend that on February 16, 2017, plaintiff covered the inside of his

21    door with a blanket and refused to take it down -- which caused defendants to be

22    concerned for plaintiff's safety. Dkt. 195, Pierce County Detention and Corrections

23    Center Observation Report (2/16/2017) at 4. Defendants allege that they informed

24

25

plaintiff that he either needed to come out of the cell or hand his belongings out of the cell. *Id.* Defendants state that plaintiff handed out a blanket and sheet but refused to hand out a towel. *Id.* Defendants next state that plaintiff charged the door and slammed the door with his fists. *Id.* Defendants maintain that after plaintiff refused to allow himself to be handcuffed, the defendants entered the cell with shields and restrained plaintiff in a restraint chair with a spit sock. *Id.*

3. February 25, 2017

Plaintiff alleges that on February 25, 2017, while being transported to a new cell, plaintiff informed defendants Duray and Allen that he believed he was being moved cells in retaliation for filing a lawsuit against the jail. Dkt. 199, Declaration of Denton, at ¶ 17. Plaintiff maintains that while he was handcuffed, Defendant Allen placed him in a chokehold until he lost consciousness. *Id.* Plaintiff claims that the defendants threatened plaintiff with a taser and threatened to choke him to death. *Id.*

Defendants state that on February 25, 2017, plaintiff was informed that he was going to be moved from one cell to another. Dkt. 175, Pierce County Detention and Corrections Center Observation Report (1/25/2017) at 5-6. Defendants report that plaintiff was initially upset, but complied with being handcuffed and moved. *Id.* However, defendants state that after about five feet, plaintiff refused to move and turned towards defendant Allen. *Id.* Defendants assert that defendant Allen applied a Level 2 Vascular Neck Restraint and began moving plaintiff while he threatened defendant Allen. *Id.* Next, defendants state that plaintiff stopped moving again after two flights of stairs. *Id.* In response, defendants state that defendant Allen applied a Level 3 Neck Restraint which had the "desired effect" of causing plaintiff to lose consciousness. *Id.* Defendants

1  report that they placed plaintiff on the ground and that after plaintiff regained

2  consciousness, moved him to his new cell. *Id.*

3      4.  May 6, 2017 and May 7, 2017

4      Plaintiff states that on May 6, 2017 Defendant Moore intentionally slammed a

5  steel door on plaintiff's arm. Dkt. 199, Declaration of Denton, at ¶ 19. Plaintiff alleges

6  that on May 7, 2017, defendant Moreno intentionally slammed the metal food slot on

7  plaintiff's fingers causing cuts that required stitches. *Id.* Plaintiff submitted the

8  Declaration of Oscar Sanabria, another detainee. Mr. Sanabria states that he witnessed

9  Defendants Moore and Moreno intentionally slam a door on plaintiff's hands and fingers

10 in response to plaintiff's complaint that his meals contained food that plaintiff was

11 allergic to. Dkt. 198-1, Declarations of Sanabria, Exhibit D and E at 13-15. Mr. Sanabria

12 states that the defendants denied plaintiff medical care after these incidents. *Id.*

13     Defendant Moreno states that on May 7, 2017, plaintiff put his arm in the food

14 port and would not remove his arm. Dkt. 191, Pierce County Detention and Corrections

15 Center Observation Report, at 4. Defendant Moreno alleges that plaintiff then quickly

16 pulled his arm into the cell and reached for something near his toilet. *Id.* Defendant

17 Moreno reports that he shut the port quickly because plaintiff had previously thrown

18 feces water at defendant Moreno through a food port. *Id.* Defendant Moreno claims that

19 plaintiff tried to stop defendant Moreno's attempt to close the port and plaintiff's fingers

20 were caught between the port and the door. *Id.* Finally, defendant Moreno states that

21 plaintiff refused medical care for his fingers. *Id.*

22

23

24

25

1    Defendants' motion argues that the Court should find that the defendants

2   conduct during the alleged incidents was reasonable (analyzing the Eighth Amendment,

3   rather than the Fourteenth Amendment) and applied in good faith. Dkt. 173 at 8-12.

4    At all times relevant to this litigation, plaintiff was a pretrial detainee. Accordingly,

5   plaintiff's claims must be evaluated under the Fourteenth Amendment, not the Eighth

6   Amendment. Therefore, the Court must consider whether the force used against plaintiff

7   was purposeful and whether the force was objectively unreasonable. *Kingsley*, 576 U.S.

8   at 397. This is a fact-based determination based on the totality of the circumstances and

9   in light of the state's legitimate interest in managing jail facilities. *Id*.

10    The parties have presented contradicting accounts of the facts underlying this

11   action. Defendants contend the force used was necessary to control plaintiff's violent

12   actions and to protect officers. Plaintiff has presented facts indicating the force used

13   was unprovoked by plaintiff's conduct and was a response to plaintiff filing civil suits or

14   threatening to file suit -- or in response to plaintiff's complaints to jail personnel about

15   the conditions of his confinement.

16    The Court cannot weigh evidence, decide credibility or make findings of disputed

17   fact. Accordingly, because genuine disputes of fact remain regarding the circumstances

18   and events underlying the use of force against plaintiff, the Court should decline to grant

19   summary judgment on the issue of whether defendants' use of force was objectively

20   reasonable.

21    Additionally, defendants argue the Court should find that qualified immunity

22   applies to defendants' conduct because plaintiff cannot show that the use of force was

23   objectively unreasonable and therefore did not rise to the level of constitutional violation.

24

25

Based on the foregoing discussion, genuine questions of material fact remain regarding the objective reasonableness of the defendants' conduct.

The Court should deny defendants' motion with regards to plaintiff's excessive force claims.

E.  Due Process

Plaintiff alleges that defendants Jackson and Jones violated plaintiff's due process rights by placing him in administrative segregation without a determination of whether he committed a rule violation, without a hearing, and without written notice. Dkt. 170 at ¶¶ 35-39. Plaintiff also alleges these defendants violated plaintiff's due process rights during his disciplinary proceedings. *Id*. Defendants argue that the Court should dismiss this claim because plaintiff has failed to show that either named defendant personally participated in any alleged violation and because procedural safeguards gave plaintiff sufficient due process protections. Dkt. 173 at 15-16.

Under Section 1983, an inmate must show that each of the defendants was involved in violating the Constitution; liability of an official will only be found if there is individual culpable action or inaction. *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). A supervisor is liable for actions of subordinates that violate constitutional rights if the supervisor "participated in or directed the  violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisor liability can exist even without overt personal participation in the unlawful conduct. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). A supervisory official can be liable for implementing a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation. *Id.*,

1    *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013), *OSU Student Alliance v. Ray*,

2    699 F.3d 1053, 1076 (9th Cir. 2012).

3        Plaintiff alleges that because he was previously held in administrative

4    segregation, upon his re-entry to the Jail he was automatically re-assigned to

5    administrative segregation without cause or due process. Dkt. 170, Complaint, at ¶ 11.

6    However, plaintiff alleges no facts indicating that defendants Jackson or Jones were

7    responsible for this decision or otherwise participated in this violation. Additionally,

8    plaintiff has not provided evidence indicating that these defendants were involved in

9    plaintiff's classification or placement in administrative segregation.

10        Accordingly, the Court should find that plaintiff has failed to allege or establish

11    the personal participation of defendants Jackson or Jones in the alleged due process

12    violations. Therefore, the Court should grant defendants' motion with regard to this

13    cause of action and dismiss plaintiff's second claim for relief without prejudice.

14        F.    Failure to Supervise and Intervene

15        Plaintiff's third cause of action alleges that defendants Duray and Pastor violated

16    plaintiff's Eighth and Fourteenth Amendment Rights by directing subordinates to violate

17    plaintiff's rights, setting in motion constitutional violations and failing to prevent

18    subordinates from violating plaintiff's rights. Dkt. 170, Complaint, at ¶¶ 40-44.

19    Defendants argue this claim should be dismissed because plaintiff has failed to show

20    that either defendant participated in the alleged violations. Dkt. 173 at 16-17.

21        1.    Defendant Duray

22        Plaintiff alleges that defendant Duray is liable for failing to supervise

23    subordinates, directing subordinates in the conduct that violated plaintiff's rights or

24

25

knowingly setting in motion a series of acts or omissions by which his subordinates

violated plaintiff's rights. Dkt. 170 at ¶ 41. Plaintiff presented testimony that defendant

Duray directly participated in an incident that occurred on February 25, 2017, failed to

intervene while defendant Allen applied a neck restraint that rendered plaintiff

unconscious and directed medical staff to deny plaintiff medical care. *See*, Dkt. 199,

Declaration of Denton, at ¶ 17 (describing defendant Duray's participation in the incident

of February 25, 2017), Dkt. 198-1, Declaration of Sanabria, Exhibit D at 13 (describing

encounter where defendant Duray directed medical staff to deny plaintiff medical care).

Defendant Duray has presented a contradicting account of the events that occurred on

February 25, 2017.

Conflicting evidence of the conduct of Defendant Duray creates a genuine issue

of material fact precluding a finding that Defendant Duray did not participate in the

alleged violations. *See, Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (finding that a

supervisor can be liable for the actions of subordinates that violate constitutional rights if

the supervisor "participated in or directed the violation, or knew of the violation and

failed to act or prevent them.")

2.   Shared Razor Policy

Plaintiff states that defendants Pastor, Jackson, and Spencer created a Jail

policy requiring that dozens of pre-trial detainees share two electric razors on a first-

come-first-serve basis. Dkt. 199, Declaration of Denton, at ¶ 11. Plaintiff contends that

because of this policy he developed a large rash. *Id.* Defendant Shanahan explained

that in plaintiff's unit there are three to four electric razors available, depending on

whether any need repair. Dkt. 190, Declaration of Shanahan, at ¶ 4. Further, defendant

1  Shanahan states that the jail's practice is that after each use a deputy sanitizes the

2  razor with alcohol and lets it dry before another use. *Id.* Plaintiff's does not oppose

3  defendant Shanahan's statement of the razor policy.

4       Inadequate medical care claims by pretrial detainees are evaluated under an

5  "objective deliberate indifference standard" that does not require proof of the prison

6  official's actual awareness of a risk to the detainee. *Gordon,* 888 F.3d at 1124-1125,

7  1125 n. 4 (9th Cir. 2018). The elements of a pretrial detainee's medical care claim are:

8  > (1) The defendant made an intentional decision with respect to the
   > conditions under which the plaintiff was confined; (2) Those conditions put
9  > the plaintiff at substantial risk of suffering serious harm; (3) The defendant
   > did not take reasonable available measures to abate that risk, even
10 > though a reasonable officer in the circumstances would have appreciated
   > the high degree of risk involved—making the consequences of the
11 > defendant's conduct obvious; and (4) By not taking such measures, the
   > defendant caused the plaintiff's injuries.

12 *Castro v. County of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir. 2016).

13
14      To prove the third element, the plaintiff must show the defendant's conduct is

15 objectively unreasonable, which will require consideration of the facts unique to each

16 circumstance. *Castro*, 833 F.3d at 1071. However, "mere lack of due care" by a

17 defendant is insufficient to establish liability. *Gordon*, 888 F.3d at 1125 (quoting *Castro*,

18 833 F.3d at 1071). Rather, the detainee must "prove more than negligence," although

19 "less than subjective intent" i.e., "something akin to reckless disregard." *Gordon*, 888

20 F.3d at 1125. Mere negligence or medical malpractice are insufficient to establish

21 deliberate indifference. *Edmo v. Corizon, Inc.*, 949 F.3d 489, 495 (9th Cir. 2020).

22      The defense has responded with analysis under the Eighth Amendment

23 standard, rather than the Fourteenth Amendment. Dkt. 173, at 12-13. Regardless,

24 plaintiff has not presented any facts or allegations indicating that any defendant acted

25

1   objectively unreasonably by failing to take measures to avoid an appreciable risk to

2   plaintiff's health. Additionally, plaintiff does not identify any genuine issues of fact

3   regarding the alleged razor policy. Accordingly, plaintiff's claims regarding the alleged

4   razor policy fail as a matter of law and should be dismissed.

5          The Court should grant defendants' motion with regards to the razor policy and

6   dismiss this cause of action with prejudice.

7                    3.   Outdoor Recreation Policy

8          Plaintiff alleges that defendants Pastor, Jackson, Genga and Karr created and

9   enforced a policy that denied plaintiff recreational privileges. Dkt. 199, Declaration of

10  Denton, at ¶ 13.

11         The Ninth Circuit Court of Appeals has held that "the Constitution requires jail

12  officials to provide outdoor recreation opportunities, or otherwise meaningful recreation"

13  to pretrial detainees. *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018); *See also*,

14  *Pierce v. County of Orange*, 526 F.3d 1190, 1208 (9th Cir. 2008) (holding that

15  conditions providing violent pretrial detainees held in administrative segregation, only 90

16  minutes of exercise per week did not comport with constitutional standards).

17         Plaintiff contends the defendants created a policy which banned outside

18  recreation for pretrial detainees in his unit and which only allowed plaintiff to leave his

19  cell every three days to shower. Dkt. 199, Declaration of Denton, at ¶ 12. Further,

20  plaintiff contends that when he was allowed his one hour of recreation time, he was

21  required to shower, shave, clean his room and call his family or lawyer during that time.

22  *Id.* at ¶ 13. Additionally, another pretrial detainee stated that in his experience, pursuant

23  to jail policy, detainees in plaintiff's unit are required to wear handcuffs, belly chains and

24

25

shackles during any recreation time and are not allowed to use the outdoor area. Dkt. 198-1, Declaration of Sanabria, Exhibit C at 11. Further, the Inmate Information Booklet confirms that detainees are allowed recreation one hour a day, three times a week, but that detainees in administrative segregation are not permitted outdoor recreation. Dkt. 178, Inmate Information Booklet, at 22.

Based on the foregoing, plaintiff has raised genuine issues of fact regarding the alleged Outdoor Recreation Policy. *See*, *OSU Student Alliance*, 699 F.3d at 1076 ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability … so long as the policy proximately causes the harm."). Therefore, the Court should deny defendants' motion with regards to the alleged Outdoor Recreation Policy.

G. Freedom of Speech

Plaintiff's fourth cause of action alleges that defendants Smith and Alexander violated plaintiff's First Amendment rights by prohibiting him from accessing magazines and newspapers, restricting him from sending and receiving mail and restricting access to legal materials. Dkt. 170 at ¶¶ 45-50. Defendants argue that the court should dismiss these claims because plaintiff cannot demonstrate prejudice and because defendant had a valid penological reason for any restrictions. Dkt. 173 at 17-18.

1. Access to the Courts

Inmates have a "constitutional right of access to the courts." *Cornett v. Donovan*, 51 F.3d 894, 897 (9th Cir. 1995). That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers" by providing them with

1   "adequate law libraries or adequate assistance from persons trained in the law." *Lewis*

2   *v. Casey*, 518 U.S. 343, 346 (1996).

3         To prevail on a cause of action for denying access to the courts, a prisoner must

4   show some actual injury resulting from the alleged denial of access. *Lewis*, 518 at 348-

5   49. Actual injury means "actual prejudice with respect to contemplated or existing

6   litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

7   "Failure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to [an

8   access to courts] claim." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008)

9   (quoting *Lewis*, 518 U.S. at 353).

10        Plaintiff has failed to allege or present evidence of actual prejudice. Plaintiff

11   contends that the defendants' conduct prevented him from representing himself, without

12   further factual explanation. *See*, Dkt. 170, Complaint, at ¶¶ 17, 18, 48; Dkt. 199,

13   Declaration of Denton, at ¶ 8. During discovery plaintiff clarified that his access to court

14   claims arise from the previous litigation *Denton v. Pastor et al.*, No. 3:16-cv-5314-RJB

15   ("Denton I"). Dkt. 174, Plaintiff's Response to Defendants' Interrogatory No. 6, at 60-64.

16   Plaintiff's claims in *Denton I* were terminated as a sanction due to plaintiff's failure to

17   comply with court orders, local rules, a refusal to coordinate with the defense and the

18   court, and plaintiff's failure to attend a pretrial conference. See, *Denton I* at Dkt. 269,

19   Findings of Fact and Conclusions of Law and Second Order of Dismissal; Dkt. 274,

20   Memorandum from the United States Court of Appeals for the Ninth Circuit (No. 20-

21   35489). There is no evidence in the record indicating that plaintiff was prevented from

22   meeting a filing deadline or from presenting a claim in the previous litigation.

1    Based on the foregoing, the Court should grant defendants' motion with regards

2    to plaintiff's access to the courts claims because plaintiff has failed to show actual injury.

3        2.  Access to Magazines and Newspapers

4    Pretrial detainees retain at least the same constitutional rights that are enjoyed

5    by convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Inmates have a First

6    Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.

7    1995). "Publishers have a First Amendment right to communicate with prisoners by

8    mail, and inmates have a First Amendment right to receive this mail." *Prison Legal*

9    *News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005). This right is subject to "substantial

10   limitations and restrictions in order to allow prison officials to achieve legitimate

11   correctional goals and maintain institutional security." *Walker v. Sumner*, 917 F.2d 382,

12   385 (9th Cir. 1990) (citations omitted). Prison officials may "adopt regulations which

13   impinge on an inmate's constitutional right if those regulations are 'reasonably related to

14   legitimate penological interests.'" *Witherow*, 52 F.3d at 265.

15   To determine whether a policy permissibly limits First Amendment freedoms, the

16   Court must consider: 1) whether there is a valid, rational connection between the prison

17   regulation and the legitimate governmental interest put forward to justify it; 2) whether

18   there are alternative means of exercising the right that remain open to prison inmates;

19   3) what impact will accommodation of the asserted constitutional right have on other

20   guards and other inmates, and on the allocation of prison resources generally; and 4)

21   whether there are "ready alternatives" for furthering the governmental interest available.

22   *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner v. Safley*, 482 U.S. 78, 89-90

23

24

25

1    (1987)). Plaintiff bears the burden of proving the absence of legitimate correctional

2    goals underlying the alleged policy. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

3            While it is ultimately plaintiff's burden to demonstrate the absence of legitimate

4    correctional goals underlying the alleged policy, it is defendants' burden – as the moving

5    party on a motion for summary judgment – to demonstrate the absence of a genuine

6    dispute of material fact for trial. *Celotex Corp.*, 477 U.S. at 323. Defendants' motion for

7    summary judgment does not identify an alleged policy, rather the motion simply states

8    that plaintiff's "privileges were limited because he was a maximum-security Level 1

9    inmate based on his assaultive behavior. Not because of a security alert." Dkt. 173 at

10   18. Plaintiff also does not cite to any particular policy with regards to his first

11   amendment claims. Dkt. 197. Rather, plaintiff asserts that the jail's policy prevented

12   plaintiff from receiving magazines, books, and other publications and that there is no

13   penological or security-related justification for the restrictive practice. Dkt. 197 at 15.

14           A policy need not be written in order to be challenged under Section 1983.

15   *Gordon v. County of Orange,* 6 F.4th 961, 974 (9th Cir. 2021). But if the policy being

16   challenged is an informal policy, the scope and terms of the policy would only be proved

17   if it is "founded upon practices of sufficient duration, frequency and consistency that the

18   conduct has become a traditional method of carrying out policy." *Id.* (quoting *Trevino v.*

19   *Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

20           In the summary judgment briefing and exhibits, the parties have not provided

21   details about the relevant policy in question, and it is unclear from the record whether

22   there is a formal policy and if so, the language, restrictions and application of the

23   alleged policy. If there is not a formal policy, the parties would need to provide more

24

25

factual foundation regarding any practices of the duration, frequency and consistency that would meet the legal standard for the existence of an informal policy by custom or practice. *Gordon v. County of Orange,* 6 F.4th 961, 974 (9th Cir. 2021). Accordingly, the Court should find that the record and briefing is insufficiently developed at this stage of the litigation to determine as a matter of law whether any alleged policy was reasonably related to legitimate penological goals.

### 3. Retaliation

Prisoners have a fundamental right to file grievances and pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). It is clearly established that purely retaliatory acts taken against a prisoner for exercising this right undermines a prisoner's First Amendment protections and is therefore a constitutional violation. *Id.* (citing *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)).

To state a viable claim for retaliation, a plaintiff must show that: 1) "a state actor took some adverse action against the inmate, 2) because of 3) that prisoner's protected conduct, and that such action, 4) chilled the inmate's exercise of his First Amendment rights, and 5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

Plaintiff's states that during the alleged excessive force incidents underlying this complaint, the defendants made statements indicating that he was being targeted for pursuing civil rights litigations. Dkt. 199, Declaration of Denton, at ¶¶ 14, 16, 17. Plaintiff attests that during the December 29, 2016 incident, defendant White stated "How you like that punk that will teach you about filing lawsuits" while deploying a taser gun on plaintiff. *Id.* at ¶ 14. Further, plaintiff states that the February 16, 2017 incident occurred

while the defendants were taking litigation related documents. *Id*. at ¶ 16. Finally, plaintiff states that during the February 25, 2017 incident, defendant Allen placed plaintiff in a neck restraint after plaintiff expressed a belief that he was being moved cells in retaliation for filing a civil rights action. *Id*. at 17.

There is sufficient evidence in the record for a reasonable jury to determine that the defendants took an adverse action against plaintiff for pursuing civil litigation against the defendants. Additionally, a reasonable jury could determine that this conduct chilled plaintiff's First Amendment rights and did not advance any legitimate correctional goal.

Accordingly, because genuine issues of material fact remain regarding the events and circumstances alleged regarding retaliation under the First Amendment, the Court should deny defendants' motion with regards to plaintiff's retaliation claims.

H. Monell Claims

Plaintiff's fifth cause of action alleges that Pierce County failed to take necessary, proper or adequate measures to protect plaintiff from the alleged violations. Dkt. 170 at ¶¶ 51-58. Additionally, plaintiff contends that Pierce County is liable because the individual defendants acted in accordance with Pierce County's formal policies in violating plaintiff's rights. *Id*. Defendants maintain that the Court should dismiss this claim because plaintiff has failed to establish any constitutional violation and because there is no evidence linking Pierce County's conduct to the facts alleged in the complaint. Dkt. 173 at 18-19.

A municipality or local government may be liable under Section 1983 only if "the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011)

(internal quotations omitted) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). Municipalities may only be held liable for their own illegal acts and may not be held vicariously liable for the acts of their employees. *Id.* To maintain an action for municipal liability, the plaintiff must show that the defendants' employees or agents acted through an official custom, or policy that permits deliberate indifference to, or violates, plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell,* 436 U.S. at 690-91; *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). To establish municipal liability under § 1983, a plaintiff must show (1) deprivation of a constitutional right; (2) that the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Although conditions of confinement claims brought by pretrial detainees arise under the Due Process Clause, the guarantees of the Eighth Amendment "provide a minimum standard of care for determining rights as a pretrial detainee." *Gordon,* 888 F.3d at 1122. A prisoner with a serious mental illness can maintain an Eighth Amendment claim if the prisoner establishes that they face a substantial risk of serious harm and that the serious risk is met with deliberate indifference to their condition. *Disability Rights Mont. Inc. v. Batista*, 930 F.3d 1090, 1097, 1101 (9th Cir. 2019) (citing *Brown v. Plata*, 563 U.S. 493 (2011)). Acting or failing to act with deliberate indifferent requires a state of mind equivalent to recklessly disregarding a known and substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 835-36, 847 (1994). "Prison officials cannot

ignore conditions of confinement that are very likely to cause serious illness and needless suffering. *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We have a great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problem but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."). The risk of harm must be objectively intolerable risk of harm. *Glossip v. Gross*, 576 U.S. 863, 877 (2015).

Plaintiff presented evidence that during his time at the Jail, he suffered from mental health diagnoses including Complex Chronic Posttraumatic Stress Disorder, Borderline Personality Disorder and Antisocial Personality Disorder. Dkt. 198-1, Dr. Eusanio Report at 24-25. Dr. Eusanio stated that plaintiff exhibited symptoms of SHU Syndrome, caused by a history of administrative segregation. *Id.* at 43-44.

During the approximately six-month span relevant to the issues in this case, plaintiff was held in administrative segregation in a maximum-security unit. Dkt. 176, Declaration of James-Hutchinson, at ¶¶ 9-13. Defendant Rhoton acknowledged that plaintiff was housed in the mental health unit of the Jail. Dkt. 183, Declaration of Rhoton, at ¶ 5. Additionally, defendant Rhoton explained that the purpose of the Mental Health Program at the Jail, was to "serve those inmates who were at risk, as a result of a mental disorder, of presenting danger to themselves or others, or becoming gravely disabled." *Id.* at ¶ 3.

Plaintiff presented evidence that, pursuant to jail policy, detainees in his unit are banned from outside recreation, and provided restricted time out of their cell – one hour

1    a day, three times a week. Dkt. 199, Declaration of Denton, at ¶ 12-13; Dkt. 198-1,

2    Declaration of Sanabria, Exhibit C at 11; Dkt. 178, Inmate Information Booklet, at 12.

3    This is sufficient evidence for a reasonable jury to determine that, pursuant to Jail

4    policy, the defendants knowingly kept plaintiff in a condition that exposed him to future

5    substantial harm and worsening mental health symptoms. Additionally, a reasonable

6    jury could determine that, pursuant to Jail policy, plaintiff was denied sufficient

7    recreational opportunities outside of his cell. *Shorter*, 895 F.3d at 1185.

8    The Court should deny defendants' motion with regards to plaintiff's *Monell*

9    claims because genuine issues of fact preclude granting summary judgment.

10   I.    Americans with Disabilities Act and Rehabilitation Act

11   Plaintiff's final cause of action alleges that Pierce County violated the Americans

12   with Disabilities Act and the Rehabilitation Act by failing to accommodate plaintiff's

13   disabilities and by discriminating against plaintiff on the basis of his disability. Dkt. 170

14   at ¶¶ 59-69. Defendants argue that the Court should dismiss these claims because

15   plaintiff has failed to demonstrate that he suffers from a qualifying disability under the

16   Americans with Disabilities Act and the Rehabilitation Act. Dkt. 173 at 19-21.

17   Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities

18   Act are designed to ensure that qualified individuals with a disability are not excluded

19   from participation in or denied the benefits of a program, service or activity of any public

20   entity, service or program receiving federal financial assistance on the basis of their

21   disability. 29 U.S.C. § 794(a); 42 U.S.C. § 12132.

22   These statutes also ensure that public entities, services and programs receiving

23   federal financial assistance do not otherwise discriminate against an individual with a

24

25

qualified disability based on such disability. 29 U.S.C. § 794(a), 42 U.S.C. § 12132.

These provisions extend to discrimination against inmates detained at state prisons and

county jails. *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017).

"Whether a person is disabled under the ADA is an "'individualized inquiry.'"

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). The term "disability" is

defined as: "(A) a physical or mental impairment that substantially limits one or more

major life activities of such individuals; (B) a record of such an impairment; or (C) being

regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities

include, but are not limited to "caring for oneself, performing manual tasks, seeing

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.

§12102(2)(A). Major life activities also include operations of significant bodily functions,

e.g. "neurological, brain." 42 U.S.C. §12102(2)(A),(B). Being regarded as having an

impairment means that the individual has been subject to prohibited conduct because of

an actual or perceived physical or mental impairment whether or not the impairment

limits or is perceived to limit a major life activity. 42 U.S.C. §12102(3)(A).

Plaintiff has presented evidence that he has a long history of severe mental

health challenges and diagnoses necessitating prescription of psychoactive medication.

Dkt. 198-1, Eusanio Report, at 26-30. Dr. Eusanio reported that plaintiff's mental health

diagnoses include Complex Chronic Posttraumatic Stress Disorder, Borderline

Personality Disorder, Antisocial Personality Disorder and SHU Syndrome. *Id.* at 40-45.

Additionally, Dr. Eusanio explained that plaintiff suffered from the following symptoms:

hypersensitivity to external stimuli; perceptual distortions, illusions, hallucinations; panic

attacks; difficulties with thinking, concentration, memory, including even acute psychotic confusional states and disorientation. *Id.* As a result, Dr. Eusanio opined that plaintiff experienced difficulties regulating his emotions and behaviors. *Id.* at 45-47.

Further, defendant Rhoton stated that plaintiff was housed in the mental health unit of the Jail. Dkt. 183, Declaration of Rhoton, at ¶ 5. Defendant Rhoton explained that the purpose of the Mental Health Program at the Jail, was to "serve those inmates who were at risk, as a result of a mental disorder, of presenting danger to themselves or others, or becoming gravely disabled." *Id.* at ¶ 3.

Based on the evidence in the record, a reasonable jury could determine plaintiff suffered from a diagnosed impairment that affected major life activities such as learning, thinking, concentrating, communication, as well as neurological functions. Additionally, a reasonable jury could also determine that plaintiff suffered from a qualifying disability because there is a record of his impairments and because the Jail regarded plaintiff as having such an impairment. 42 U.S.C. § 12102(1)(B), (C).

The Court should deny defendants' motion with regards to plaintiff's ADA and Rehabilitation Act claims.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should DENY defendants' objection and motion to strike (Dkt. 201). The Court should GRANT IN PART and DENY IN PART defendants' motion for summary judgment (Dkt. 173). The Court should:

- Dismiss without prejudice plaintiff's due process claims against defendants Jackson and Jones;

- Dismiss without prejudice plaintiff's claims against Rhoton, Caruso, James-Hutchinson and Brasswell-Bouyer.
- Dismiss with prejudice plaintiff's claims based on the alleged one razor policy;
- Dismiss with prejudice plaintiff's access to courts claim;
- Deny defendants' motion with regards to all other challenged claims; and
- Allow plaintiff's remaining claims to proceed in this litigation.

The parties have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have fourteen (14) days from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on December 31, 2021, as noted in the caption.

Dated this 16th day of December, 2021.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge